ANN J. LENNOX, Appellant, v. VANDALIA COAL COMPANY, Respondent.

St. Louis Court of Appeals, May 12, 1896.

Landlord and Tenant: TERMINATION OF TENANCY.  A lease of land, which required the lessee to mine coal thereon at a stated royalty, provided for a minimum production and a minimum rental on that basis.  It provided that the term should end when the workable coal was exhausted, but also entitled the lessee to use a part of the demised premises in connection with the mining of coal on adjoining land.  *Held*, that the lessee could not escape the payment of the minimum rental on the ground of the exhaustion of coal, so long as he retained possession of the demised premises for any purpose under the lease.

*Appeal from the Montgomery Circuit Court.*—HON. E. M. HUGHES, Judge.

REVERSED AND REMANDED.

*C. P.* and *J. D. Johnson, Barker & Shackelford,* and *W. B. M. Cook* for appellant.

*Peers & Morsey* and *George Robertson* for respondent.

BOND, J.—Plaintiff and her husband entered into the following contract with defendant:

"This agreement made and entered into this the twenty-seventh day of December, 1887, between George W. Lennox and his wife, Ann J. Lennox, of the city and county of St. Louis, party of the first part, here-

inafter called the lessors, and the Vandalia Coal Company, a corporation existing under the laws of the state of Missouri, party of the second part, hereinafter called the lessee, *witnesseth:*

"That for and in consideration of the sum of $1 to each of said parties in hand paid, the receipt whereof is hereby acknowledged, and for other good and valuable consideration, said lessors have granted and demised and leased for the period of twenty years, ending December the 27, 1907, and by these presents do hereby grant, demise, and lease, for to mine bituminous coal, formed in and under or throughout a certain tract of land, to wit: All the southeast quarter of section 28, lying south and west of the Wabash, St. Louis & Western Railway, in township 50, range 6 west, containing one hundred and forty-one and fifty-eight hundredths acres and located in the county of Montgomery and state of Missouri, reserving therefrom all the coal contained under five acres of land where the dwelling house is located, to be hereafter laid off in manner and shape as the said lessors may direct. And the said lessors grant to the said lessees, the exclusive right to enter upon the land hereby leased to search for coal, to drive tunnels, passages and ways, in or through said land and to mine and remove coal therefrom in such manner as may be expedient.

"And the said lessors grant to the said lessee free of charge during this lease so much of the surface of said land, not to exceed two hundred and ten feet square, as may be required for the sinking of and hoisting and air shafts and the erection of the necessary hoisting machinery and buildings pertaining thereto, and adjoining the right of way granted to the railway company above referred to, as well as the

right of use to a strip of land seventy feet wide, running along said right of way from the shaft which may be sunk to the northeast corner of the said tract of land for the purpose of storing or depositing culm or other debris from said shafts; also a right of way for a wagon road from the said shaft to the nearest public highway.

"And it is further agreed that the said lessee may use the shaft sunk in said land for the purpose of removing coal from any adjoining land. And lessee agrees that, commencing with the month of July, A. D. 1888, to pay the said lessors the sum of $50 per month, and commence the mining of coal not later than the first day of July of the same year, and continue mining operations until all the workable coal shall be taken out, producing therefrom monthly not less than eight hundred tons of merchantable coal such as may pass over a screen of one inch mesh, for which the said lessee agrees to pay six and one fourth cents per ton royalty; and the said lessee further agrees with said lessors to make monthly settlements with said lessors for above specified monthly payments of $50, also for all coal mined from the land so leased on or before the twenty-fifth day of each succeeding month. Provided, however, that, in case of a failure to produce the amount of coal herein stated as the monthly minimum production, the said lessee agrees to pay said lessors, their executors, administrators or assigns, the sum of $50 for such month, the difference between this sum and the amount actually due for royalty on coal mined to be regarded advance royalty and to be deducted from the excess production of any succeeding month of the current year. And the said lessee shall have the right to build, rebuild or remove, any or all of the buildings, fixtures and improvements, erected by said lessee on said lands during this agree-

ment and until all the coal in the adjoining lands
mined by said lessee, that can be worked and removed
from the hoisting shaft herein alluded to, shall have
been exhausted within the limit of this lease. And
said buildings, fixtures and improvements, may be
removed within a reasonable time thereafter. And
the said lessee agrees to pay and fully discharge all
taxes on the buildings, fixtures and improvements,
made by it on said land.

"It is especially understood and agreed by and
between the said lessors and lessees that, if the royalty
above mentioned or any part thereof shall be unpaid
on the day of payment, or if default be made in any
of the covenants or agreements herein contained to be
kept by the said lessee, its executors, administrators or
assigns, it shall and may be lawful for the said lessors,
their heirs, executors, administrators or assigns, at
their election after giving thirty days' notice to said
lessees to declare said lease ended, and into said
premises or any part thereof enter with or without
process of law, to reenter and the said premises again
to repossess and enjoy as in their first and former
estate.

"*In testimony whereof* the said lessors and lessee
have set their hands and seals the day and year first
above mentioned."

The husband died in March, 1894, having first
bequeathed and devised to the plaintiff all his right,
title and interest, in and to said premises, together
with all his rights, benefits and interests, under said
contract. The defendant paid $50 monthly under said
contract from the time it was made until September,
1895, except one or two months during that interval,
when a less sum was agreed upon. Since said date
defendant has paid nothing under said contract. Plain-
tiff asks judgment for $50 for the month of September,

1895. The answer admitted the contract and prior payments by defendant up to September 1, 1895, and alleged that it refused thereafter to pay the $50 demanded by plaintiff under said contract, because the land leased to defendant for mining purposes had ceased to produce coal, all the coal having been exhausted.

The evidence shows that defendant is still in possession of the land under said contract. There was also evidence that the coal yield of said land is practically exhausted, wherefore it could not be made to produce eight hundred tons of merchantable coal per month.

The cause was submitted to the court without a jury and judgment given for defendant, from which this appeal is taken.

Plaintiff's right to recover depends upon the obligations assumed by defendant under the above contract. These are to be determined according to the intent of the parties as gathered from all parts of the instrument itself. *Clark v. Midland Blast Furnace Co.*, 21 Mo. App. 58; *Beatie v. Coal Co.*, 56 Mo. App. 221; *Wardell v. Watson*, 93 Mo. 107. The terms of the contract give defendant the right "to mine bituminous coal" under a tract of one hundred and forty-one acres of land for twenty years from the twenty-eighth of September, 1887, with a further use of two hundred and ten feet of the surface adjoining the right of way of a railroad intersecting said land, as well as the use of seventy feet running along said right of way and extending to the northeast corner of the tract, the surface rights thus granted to be used for construction of mining machinery, with the privilege to defendant to use such structures for removing all coal from adjoining lands (of other parties) wherein it has mining rights or privileges, and a further right in defendant to remove said buildings, fixtures and improvements,

after the exhaustion of the coal product of said adjoining land.

The considerations to be given by defendant for the foregoing rights are awkwardly expressed, but may be arrived at from a view of the whole instrument. They are that defendant should commence mining operations on July 1, 1888, and continue "until all the workable coal shall be taken out, producing therefrom monthly not less than eight hundred tons of merchantable coal," paying therefor a royalty of six and one fourth cents per ton, such payment, however, to amount to $50 a month in any event, with the right on the part of defendant if the yield of a particular month is less than eight hundred tons, so that the amount produced multiplied by six and one fourth cents per ton would be less than $50, to deduct the difference between the cost of the number of tons produced for that month and the $50 required to be paid from the excess over eight hundred tons of the production of a succeeding month. It was the evident purpose of the parties that a fixed rental of $50 per month should be reserved in this way as long as the mining operations could be conducted so as to produce an average yield of eight hundred tons per month, which was the standard yield apparently contemplated by them. Defendant insists that it has become impossible to derive this amount of coal or any substantial part thereof by further workings. There was evidence sustaining this view, and the court so found. Defendant therefore invokes, as a defense to any further liability under the contract, the clause thereof which only required it to continue mining operations "until all the workable coal shall be taken out." If defendant's contention in this respect be conceded, still under the facts in this record defendant is not entitled to claim exemption from the payment of the amount of rental fixed in the contract

while it still continues to mine coal and possess the land under the contract. *Clark v. Midland Blast Furnace Co., supra.* If defendant intended to claim a cessation of the contract by reason of the exhaustion of the coal deposit in the lands, it should have surrendered the premises.

Under the contract, *supra*, defendant is entitled to the use of the premises for the convenience of its mining operations on adjoining lands. If it continues to hold them for that or any other purpose, it can not avoid the payment of the stipulated price while its user under the contract is continued. The finding of the circuit judge was, in effect, that defendant could hold under the contract and avoid its burden. This was erroneous. Under the facts shown, the plaintiff was entitled to judgment. The judgment will, therefore, be reversed and the cause remanded. All concur.