# LENNOX, Appellant, v. VANDALIA COAL COMPANY.

### Division One, November 12, 1900.

1. **Landlord and Tenant:** TERMINATION OF TENANCY.  A lease of land for mining purposes provided for the mining of coal at a stated royalty and for a minimum monthly production and a minimum rental, and also granted the lessee the privilege of using a shaft sunk on said land for the purpose of mining coal from any adjoining land. *Held*, that the company, so long as it remained in possession of and used the shaft, could not escape the payment of the minimum monthly rental on the ground that the coal on the land leased of plaintiff was exhausted.

2. **Striking out Part of Petition:** WHEN REVIEWABLE. Plaintiff in her original petition sued for only one month's rent, and failing to recover, appealed to the court of appeals, where the cause was reversed and remanded, and the petition was then amended by bringing into the case a claim for the rents accruing to plaintiff under the lease after the original suit was instituted, and on motion all this new part of the petition was stricken out, and no formal leave was asked or given to file an amended petition, and no further amended petition was filed, but defendant filed as answer to what remained unstricken out that the coal had hitherto been exhausted and plaintiff's reply thereto was a general denial. *Held*, that, although the writer of the opinion is of the opinion that the action of the court in sustaining the motion to strike out is not open to review, yet as this court has often held to the opposite view, the point will not be pressed, but plaintiff's right of review will be considered.

3. **Landlord and Tenant:** RENTS ACCRUING AFTER SUIT BROUGHT. A landlord can not amend his petition so as to include a claim for rents which have accrued since the original suit was brought. Such amendment of the petition would be to state a new cause of action. A statement in the petition that defendant has failed to pay the rents due for such subsequent months is in no sense a statement that such failure is a continuation of the wrong done in failing to pay the rent due when the original action was brought; and, in fact, such wrong is an independent, and not a continuous one.

Appeal from Montgomery Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*J. D Johnson* for appellant.

(1) In the first count of the amended petition, plaintiff only sued for the installment of fixed rental for that month, together with other installments for subsequent months, omitting from the account all averments regarding the said royalties; but in the second count of the amended petition she sued to recover the royalties for the said month of August, 1895, which were embraced in the original

petition, also to recover royalties which accrued for other months subsequent to that month. The trial court, therefore, erred in striking out the entire second count of the amended petition. (2) The claim for fixed rentals and for royalties for the month of August, 1895—and for that matter, for all the other months mentioned in the first and second counts of the amended petition—should probably have been embodied in the same count; but defendant did not object to their being declared on in separate counts, so that the defect, if it was one, must be considered as having been waived by it. (3) The enlargement of the original petition in the first count of the amended petition, so as to declare on the monthly installments of fixed rentals which had accrued between the filing of the two petitions, does not constitute "a substitution of a new cause of action;" neither do the averments of the second and third counts which are predicated on royalties that accrued to plaintiff under the lease during other months than the month of August, 1895, which were unpaid at the time the amended petition was filed, amount to such "a substitution of a new cause of action." The trial court, therefore, erred in striking out both these counts and the portions of the first on the grounds assigned. Union Depot Co. v. Railroad, 131 Mo. 311; Childs v. Railroad, 117 Mo. 436; Nave v. Adams, 107 Mo. 421; Railroad v. Calkins, 90 Mo. 538; Ward v. Davidson, 89 Mo. 455; Schwab v. Railroad, 71 Mo. App. 244; R. S. 1889, secs. 2063 and 2104; Liese v. Meyer, 143 Mo. 555.

*Geo. Robertson* and *Peers & Morsey* for respondent.

(1) When this action was first brought, there was due only the amount for the month of August, 1895, and therefore could not include any installments for the future, and

any installment for any subsequent month is a distinct action. Flaherty v. Taylor, 35 Mo. 451; Railroad v. Traube, 59 Mo. 355; Hoffmann v. Hoffmann, 126 Mo. 487; Boyce v. Christy, 47 Mo. 70. The court did not err in striking from the first count of plaintiff's amended petition the claims for the months accruing after August, 1895, for the reason that each month thereafter constituted a new cause of action. Davis v. Clark, 40 Mo. App. 515; Scoville v. Glassner, 79 Mo. 449. The court did not err in striking out the second count, as it was a substitution of a different cause of action from the original and was based solely on an erroneous construction of the contract as stated in that count. (2) By refiling the petition as amended and filing reply to answer, the plaintiff acquiesced in the action of the court in striking out the parts of the petition. The point is waived by failing to stand on the original pleading. Coffman v. Walton, 50 Mo. App. 404; Fugle v. Hobbs, 42 Mo. 537. And it makes no difference that plaintiff excepted to the ruling of the court in sustaining the motion. Gale v. Foss, 47 Mo. 276. (3) The court should have allowed the defendant to show that the coal was exhausted, for a contract to work is terminated by the exhaustion of the mines. Walker v. Tucker, 70 Ill. 527; Beach on Contracts, sec. 235; Lawson on Contracts, sec. 425.

ROBINSON, J.—Geo. W. Lennox owned a tract of land containing about one hundred and forty acres adjoining the Wabash Railway, at Wellsville, Montgomery county, Missouri. This land was supposed to be underlaid with coal, and valuable for mining purposes. On December 27, 1887, Mr. Lennox and his wife, the plaintiff herein, executed a mining lease to defendant for the period of twenty years, ending December 27, 1907.

By the terms of the lease defendant was given "the exclusive right to enter upon the land hereby leased, to search for coal, and to drive tunnels, passages, and ways in and through said land, and to mine and remove coal therefrom in such manner as may be expedient." The lease also gave defendant two hundred and ten feet square of surface, of the leased premises, adjoining the Wabash Railway, on which to sink hoisting and air shafts and erect necessary hoisting machinery, buildings, etc. Also a strip of land seventy feet wide, running from the hoisting shaft along the railroad to the northeast corner of the tract, on which to deposit debris from the shaft; also the right of way of a wagon road from "the said shaft to the nearest public highway." In addition thereto, it gave defendant the right to hoist the coal mined on the land adjoining the leased premises up through said hoisting shaft. In respect to the rents to be paid by defendant therefor, the lease provided as follows: "And lessee agrees that commencing with the month of July, 1888, they shall pay to said lessors the sum of fifty dollars per month, and commence the running of the coal not later than the first day of July, the same year, and continue mining operations until all the workable coal shall be taken out, producing therefrom monthly not less than eight hundred tons of merchantable coal, such as may pass over a screen of one inch mesh, for which said lessee agrees to pay 6 1-4 cents per ton royalty, and the said lessee further agrees with the said lessors to make monthly settlements with said lessors for above specified monthly payments of fifty dollars, also for all coal mined from the land so leased, on or before the twenty-fifth day of each succeeding month; provided, however, that in case of a failure to produce the amount of coal herein stated, as the monthly minimum production, the said lessee agrees to pay said lessors, their executors, administrators, or assigns, the

sum of fifty dollars for each month; the difference between this sum and the amount actually due for royalty on the coal mined to be regarded as advance royalty, and to be deducted from the excess production of any succeeding month of the current year."

The defendant immediately took possession of the leased premises, sank shafts, erected buildings and machinery, mined and removed coal therefrom, and from the adjoining land up through said hoisting shaft on said leased premises, and was still in possession of the land, using the same and hoisting coal through said shaft from the adjoining land at the time of the trial in the court below. Mr. Lennox died in March, 1894, having, by a will subsequently probated, devised and bequeathed to the plaintiff, all his right, title and interest in and to the leased premises, together with all his rights, benefits and interests under such lease and made her his residuary legatee, appointing her his executrix of the estate. This action was brought by the plaintiff, as such devisee, in the Montgomery Circuit Court, on October 10, 1895, to recover an installment of rent of $50, and the royalty then alleged to be due, under the lease in question, for the month of August, 1895.

The case was tried at the November term, 1895, and resulted in a judgment in favor of defendant. From this judgment an appeal was taken to the St. Louis Court of Appeals, where the judgment of the trial court was reversed and the cause remanded for a new trial. [Lennox v. Vandalia Coal Co., 66 Mo. App. 560.] On the return of the case in November, 1896, plaintiff filed an amended petition, containing three separate counts.

In the first count plaintiff enlarged her demand, as set up in the original petition, so as to include the installment of rent of $50, for the months of August, September, Octo-

ber, November and December, 1895, and January, February, March, April, May, June, July, August and September, 1896, aggregating the sum of $700. All of these installments, except the one for August, 1895, accrued subsequent to the filing of the original petition; the claim for royalty of 6 1-4 cents per ton contained in the original petition, being omitted from this count.

The second count sought an accounting for all coal mined by defendant under the lease, from the date of Mr. Lennox's death, at which time under the provisions of the will, plaintiff became seized of the leased premises in fee, until November 24, 1896, the date of filing the amended petition, and prayed judgment for the royalty of 6 1-4 cents per ton thereon, as provided for in the lease, which, it is alleged, amounted in the aggregate to the sum of $1,500.

The plaintiff sought in the third count to recover for royalties which had accrued under the lease on coal mined by defendant, during the period beginning October 1, 1892, and ending at the death of Mr. Lennox, upon the theory that the royalties were bequeathed to her by her husband's will as residuary legatee; that the administration, upon said estate, had been finally settled before this suit was brought and all demands against the same paid, hence, the royalties became the absolute property of the plaintiff and an action therefor could be maintained by her in her individual capacity.

On motion of defendant, the court below struck out the second and third counts of the amended petition, and all of the first count "except the claim for rent for the month of August, 1895," thereby leaving the action as stated in the original petition. Defendant based its motion to strike out the first, second and third counts of plaintiff's amended petition on the grounds that they were each a substitution of a new cause of action. Plaintiff saved her exception to the

action of the court in striking out the several counts of the amended petition. Thereupon defendant answered to what remained of the first count, admitted the lease and prior payments and averred that the refusal to pay the $50 claimed by plaintiff under the lease for the month of August, 1895, was because the mines had become exhausted and ceased to produce coal. Plaintiff thereupon filed a reply, denying each and every allegation contained in defendant's answer. The cause proceeded to trial before the court sitting as a jury and judgment was rendered in favor of plaintiff for the sum of $50, "rent due for the month of August, 1895."

Thereupon, on the same day, both plaintiff and defendant filed motions for a new trial and in arrest of judgment, which were overruled and appeals duly perfected by both parties, to this court.

While the judgment of the circuit court is only for $50, yet the aggregate amount of the plaintiff's claim, as shown by the amended petition, exceeds $2,500, and on her appeal this cause has been sent to this court. The evidence shows that defendant has paid no rent of any kind since July, 1895, although it is still in possession of the leased premises, using the same for hoisting coal mined on adjacent lands, and declines either to vacate or to pay the stipulated rental provided for in the lease. It is insisted by the counsel for defendant, that it is under obligation to pay $50 per month, stipulated in the lease contract, only so long as eight hundred tons of workable coal can be found, or eight hundred tons of merchantable coal be produced or mined from the leased premises per month.

Plaintiff, on the other hand, with equal earnestness maintains that the defendant is bound to pay the fixed sum of $50 per month during the entire term of the lease, regardless of whether there is any coal or not found, provided that

defendant continues to occupy the land for any purpose, and in addition, a royalty of 6 1-4 cents per ton on all coal mined, which royalty shall not be less in the aggregate than $50 each month, during each current year, and as much more as the coal mined above eight hundred tons per month would yield computed at 6 1-4 cents per ton.

The present contention of both plaintiff and defendant upon those issues was settled by the construction placed upon the lease in question by the St. Louis Court of Appeals when the case was in that court on plaintiff's first appeal.

At the first trial of the cause, when the suit had been instituted for only the rent and royalty alleged to be due for the month of August, 1895, the defendant then, as at the last trial, interposed the defense against further liability upon its part under the terms of the lease, that it was under no obligation to mine coal from the land, after there was no longer sufficient coal therein to enable it to produce therefrom as much as eight hundred tons of merchantable coal per month; that the land was practically exhausted of coal and could not be longer worked profitably, and that not a pound had been produced therefrom since the month of July, 1895. The lower court in the first trial of the cause took the view as now contended for by defendant, and accordingly awarded defendant a judgment, from which the plaintiff appealed to the St. Louis Court of Appeals, and that court construed the terms of the lease adversely to the contention as then and now made by defendant, reversed and remanded the cause to the trial court for a rehearing, saying during the course of the opinion that, "If it [defendant] continued to hold them [the shafts, drifts and the land which was then being used by defendant in the work of moving coal from adjoining lands] for that or any other purpose, it can not avoid the payment

Vol. 158 mo—31

of the stipulated price while its use under the contract continues." That court also further interpreted the contract to mean, that so long as defendant continued to hold or operate the mine on plaintiff's lands it was to pay a fixed monthly rental of not less than fifty dollars per month, and that if more than 800 tons of merchantable coal was produced from said land, by defendants in any month, the excess above that amount should be paid for at the rate of 6 1-4 cents per ton, with the right on part of defendant if the yield of coal from the land for any particular month should be less than 800 tons it then would be entitled to have a credit for the difference between the value of the coal actually produced at 6 1-4 cents per ton, and the fifty dollars to be paid that month, to be applied as a payment to that extent, or any excess over fifty dollars, that might be required the next succeeding month for coal produced in excess of 800 tons. The action of the circuit court in rendering judgment for plaintiff, at the last trial of the cause, for fifty dollars for the rent due for the month of August, 1895 (the minimum rent charge per month to be paid for the use of the land and shaft thereon throughout the life of the lease), was correct upon defendant's own showing that it continued to hold, occupy and use plaintiff's land and the shafts and drifts thereon in connection with its mining operations on adjoining lands. The provision of the lease, "that the licensee may use the shaft sunk on said land, for the purpose of mining coal from any adjoining land," was never intended as a grant of authority to the defendant to enjoy the use and occupancy of plaintiff's land and the shaft thereon, independent and exclusive of its right and duty to continue mining operations on plaintiff's land at all times during its occupancy, and yet remain unaffected by the stipulation thereof which provides for the payment of rent. In consideration of the rights conferred upon

defendant by the lease, it agreed to pay to plaintiff each month after July, 1888, at least fifty dollars, and such additional sum per month as the ore mined from said land during that month above. 800 tons would amount to, computed at 6 1-4 cents per ton. The fifty dollars was a minimum rent charge that defendant was compelled to pay so long as it held plaintiff's land under the lease after July 1, 1888, regardless of whether any coal was mined therefrom or not, if plaintiff chose to hold the land with its shafts and drifts therein for the purpose of facilitating it in conducting mining operations upon adjoining land, or for any other purpose whatever. The defendant can not hold the land with its shafts and drifts, to enjoy one benefit to it conferred under the lease, and at the same time escape the burden imposed thereunder, merely because no named, definite or fixed rent charge is designated for that particular benefit or privilege. The rent charge provided under the lease, was for all the rights and privileges that defendant was to enjoy thereunder, although in a measure it is true that that charge was to be determined by the amount of coal produced by defendants from the land of plaintiff. So long as defendant continues to hold and enjoy the land under the lease it is no answer to plaintiff's demand for rent, to say that "the coal in said land can not be profitably worked longer, or that it has been entirely exhausted of coal." If defendant would claim a cessation of the rent charges provided under the lease, it must make a cessation of its holding thereunder. If defendant will cling to the privileges of the lease, its burdens with like tenacity will follow its holding. Defendant's appeal from the judgment of the trial court for fifty dollars, upon what remained of the first count of plaintiff's petition, is therefore adjudged to be without merit.

On part of plaintiff as appellant, it is contended, that under our practice act ample warrant is given to justify the

amendment made to the original petition, by bringing into the, case the claim for the rents accruing to plaintiff under the lease after the suit was instituted, and before the amended petition was filed, as claimed in the first count in the amended petition, as also for the rent charges sued for in the second and third counts thereof, and in support of the contention in behalf of the first count of the amended petition in particular, the cases of Childs v. The K. C., St. J. & C. B. Ry. Co., 117 Mo. 414, and Ward v. Davidson, 89 Mo. 445, are cited and relied upon.

The defendant, upon the other hand, contends, first, that the ruling of the trial court upon the motion to strike out, is not now open for review, for the reason that plaintiff has waived the error, if any, in such action by her acquiescence in its ruling, in proceeding to trial on what was left of the first count unaffected by that ruling; and, in the second place, if it be conceded that the court's action in striking out all that part of the first count of plaintiff's amended petition, except the item of rent for the month of August, 1895, is open for review on this appeal, the action of the court in that behalf must be sustained for the reason that the claim for the 13 monthly installments of rent accruing after August, 1895, constituted a new cause of action; that the second count of plaintiff's amended petition stricken out, was likewise the substitution of a different cause of action from that set up in the original petition, predicated upon an erroneous construction of the terms of the lease; that the third count stricken out, was also a substitution of a new cause of action for that set up in the amended petition predicated upon the same erroneous construction of the lease; and further that if the facts stated any cause of action whatever, the same vested in the legal representatives of Geo. W. Lennox, and could be maintained only by his administrator or executor suing in that capacity.

The first question for solution necessarily arises upon defendant's contention that the action of the trial court in striking out part of plaintiff's amended petition is not now open for review before this court on plaintiff's appeal.

If that position of defendant can be sustained, then all other questions arising out of plaintiff's appeal are set at rest and the case is thereby disposed of.

It will be remembered that when the motion to strike out part of plaintiff's amended petition was sustained by the court, no formal leave was asked or given to file an amended petition, and no amended petition, by name, was filed, but defendant filed answer to what remained of the first count, constituting a cause of action, and averred its refusal to pay the fifty dollars therein sued for as the rent claimed for the month of August, 1895, because the land named in the lease had before that time become exhausted and ceased to produce any coal whatever. The plaintiff replied thereto by a general denial, and upon the issues thus joined a trial was had, resulting in a verdict and judgment for plaintiff for fifty dollars and interest as before stated.

While the writer of this opinion is free to confess his want of appreciation of the distinction made between cases, reaching this court, where the plaintiff or defendant has filed an amended petition or answer in conformity to the ruling of the trial court, when a part only of the original pleadings had been adjudged insufficient on a motion to strike out, and those cases where after a like ruling upon a like motion to strike out, the parties without filing an amended petition or answer or without a formal refiling of that part of the original not adjudged insufficient, have gone to trial on the issue thus remaining, that such distinctions have been made by this court is most manifest, and in obedience to the holding in those cases it must be ruled in this, that plaintiff upon the

facts of this record has the right to have reviewed the action of the trial court in striking out part of her amended petition notwithstanding she went to trial and got a judgment upon the issue left remaining in her petition, after the motion to strike out had been sustained. [Munford v. Keet, 154 Mo. 36; McKenzie v. Donnell, 151 Mo. 431.]

To the writer, both the language of section 2066, Revised Statutes 1889, as well as the reason for such a rule, impel the belief that it was the intention of the framers of our practice act, to require all parties to a legal proceeding, when pleadings have been stricken out in whole or in part, on proper motion to that end, to file an amended pleading, and that in default thereof the court shall proceed in the same manner as if no original pleading had been filed. And that when an amended pleading had been filed, pursuant to the court's action in striking out a part of the original pleading, all inquiry as to the propriety of that order, or as to the sufficiency of that part of the pleading eliminated, is forever closed, and that, too, whether the pleading is amended by refiling that part which remained uneliminated by the court's order, or whether the remaining and uneliminated portion of the pleading is rewritten, remodeled and refiled as a new and amended pleading as such by name, or whether the unassailed portion of the pleading be changed or amended by an authorized interlineation, or when as in the present case, no formal action is taken by the pleader whatever, regarding that part of the pleading that has been left remaining unaffected by the court's order upon the motion to strike out, and issue has been joined therein by answer filed by the adverse party, the rule should be the same. In either and in every such instance the pleader should be held to have submitted to the ruling of the court, when he or she has asked and received a hearing upon the cause of action left remaining in his or her petition.

When an amended pleading, by name, is filed after a motion to strike out a part of the original pleading has been sustained, all agree that the action of the trial court on that motion is not the subject of review on appeal and that, too, without regard to the question of the likeness or similarity of the amended pleading filed, to that which was left of the original, unassailed by the motion to strike out. Surely it ought not, by a process of construction, to be held, that merely because a pleader complies with the strict letter of a statute and files "a further like pleading within such time as the court may direct," when a part of his pleading has been stricken out on motion, he should be denied a right which he or another pleader under like circumstances would have retained by disregarding the statute, and proceeding with the trial of the cause of action left remaining in his or her curtailed and amended pleading. The statute says that when a part of the pleadings have been stricken out on motion, the pleader "shall file a further like pleading, within such time as the court may direct; and in default thereof, the court shall proceed with the cause in the same manner as if no such original pleading had been filed." But whether the statute had so directed that a further like amended pleading should be filed or not, the pleading left remaining unaffected by the motion to strike out, is a new and an amended pleading, whether it be so indorsed and refiled as such or not. The calling of a pleading by a given name; the indorsement of it as such, or the failure to name or rename it altogether, is a thing of no consequence, and should not result in a different rule being applied to the action of the court on the motion to strike out, where a trial is had upon what remains of the pleading stating a cause of action or defense, after the motion to strike out had been sustained, whether the remaining cause of action or defense left in the pleading is tried upon the

corrected, altered or amended pleading, or upon a new frame of words declaring upon the same cause of action or defense refiled by the counsel in the case as an amended pleading by name.

A pleading is amended when a correction of its faults have been made; when its defects have been cured, whether that change has been brought about by the action of the court in striking out and lopping off improper, irrelevant and unnecessary matter contained therein, or whether a new frame of words has been filed embodying the good of the original, with the improper, irrelevant and unnecessary matter left out in obedience to the view of the court expressed in sustaining the motion to strike out, and when a trial has been asked and had upon the issue presented by that corrected, altered and amended pleading, the question as to the merit of the original pleading as a whole, or of that part stricken out, ought, we think, to be considered as waived. It is not consistent that a party be allowed to adopt, and at the same time challenge, the judgment of a court.

If, as it is said in the case of Munford v. Keet, 154 Mo. l. c. 49, when "a part of a pleading is adjudged insufficient, but there remains enough to constitute a good petition or answer, the issue so remaining must be tried just as if the part eliminated had never been embodied in the pleading, and thereafter, upon proper exceptions, the ruling of the trial court as to the part eliminated is open to review in the proper appellate court," but that the converse is true when the whole pleading is stricken out and an amended pleading is filed, then the language of section 2066, Revised Statutes 1889, is made meaningless. If the right to file a further like pleading within such time as the court may direct, does not apply to pleadings where enough remains to constitute a good petition or answer, after the motion to strike out has been sus-

tained, then the command of the statute that "the court shall proceed with the cause in the same manner as if no such original pleading had been filed," means nothing. Without the statute, when the entire pleading has been stricken out and no amended or substituted pleading is offered in its stead, the court could do nothing else than proceed with the cause in the same manner as if no original pleading had been filed. If the command of the statute was intended to accomplish a result, it should be interpreted as it reads, to apply to all pleadings that have been adjudged insufficient, whether in part or in whole. Under this view of the statute, and treating plaintiff's conduct in proceeding to its trial of the cause of action left stated in her petition after the motion to strike out had been sustained, as in effect a compliance with the command of the statute, the writer is of opinion that plaintiff ought to be denied the right to have reviewed the court's action in striking out part of her amended petition. But as this court has held otherwise, that question will not be pressed further and plaintiff's right of review will be considered.

In the original petition filed by plaintiff she sought to recover on one installment of fixed rental of fifty dollars for the month of August, 1895, and also for one installment of royalty as it is styled, on 800 tons of coal mined by defendant during said month of August, 1895, at 6 1-4 cents per ton, also amounting to the sum of fifty dollars.

In the first count of her amended petition, filed after the case had returned to the trial court from the St. Louis Court of Appeals, plaintiff declared only upon the installment of fixed rental of fifty dollars for the month of August, 1895, together with other installments of fixed rental for the subsequent thirteen months which accrued after the original petition was filed, thus leaving out in this count of the amended petition all claims for the royalty on the 800 tons of coal at

6 1-4 cents per ton, alleged to have been mined during the month of August, 1895, contained in the original petition. In the second count of the amended petition, however, plaintiff seeks to recover royalty on all ore mined from her land by defendant during the month of August, 1895, and for the next succeeding thirteen months thereafter, computed at 6 1-4 cents per ton, with a prayer for an accounting to ascertain the amount of ore so mined during said period.

In the third count of the amended petition it was sought to recover for royalties which it alleged had accrued under the lease, on coal mined by defendant, which had never been paid for during the period beginning October, 1892, and ending with the death of Lennox in 1891. Plaintiff based her right of recovery on this count upon the theory that such royalties became her absolute property under the will of her deceased husband; that her husband's estate had been finally settled and all debts against same had been paid, and that she is therefore now entitled to sue in her own name.

The plaintiff in framing her amended petition, as in her contention now before this court, has wholly misconceived the scope and meaning of our practice act. Neither sections 2103 nor 2104, Revised Statutes 1889, recognizes or sanctions the right of a plaintiff to bring before the court by an amended or supplemental petition a new cause of action from that stated in the original petition, and ask judgment upon it, and the cases cited by plaintiff as giving that meaning to those sections do not sustain her contention to give sanction for the amendment made in this case by her. The case of Childs v. K. C., St. J. & C. B. Ry. Co., 117 Mo. 414, cited by plaintiff, was an action to obtain an accounting between plaintiff and defendant as tenants in common, and to recover from defendant damages on account of waste committed by them upon the common estate, of which they held the exclu-

sive possession. A second amended petition was filed in that case, setting up a continuation of the act complained of from the date of the filing of the first petition down to the date at which plaintiff sold the property, which was subsequent to the original institution of the suit, and this amendment was sustained and plaintiff awarded a judgment for his damages up to the date therein designated subsequent to the original institution of the suit by him, for the sole reason, as expressed by the court, on defendant's appeal, that the new facts stated in the amended petition showed but a continuation of the same wrong. The case of Ward v. Davidson, 89 Mo. 445, also cited and relied upon by plaintiff, as authority for the amended petition filed by her in this case, is to the same effect as Childs v. Ry. Co. The new matter thus pleaded simply enlarged the extent of the relief, by stating a continuation of the same breach of trust complained of in the first instance, and the amendment was sustained upon the authority of section 3573, Revised Statutes 1879, now section 2104, Revised Statutes 1889. But these cases, and all others to which they refer as authority, are far short of announcing as a rule of practice, the right by amendment, to enlarge the original cause of action by stating new and additional facts constituting an independent cause of action.

The matters stated in the first count of plaintiff's amended petition, stricken out on motion, was not the statement of a continuation of the same wrong complained of in the original petition, for which additonal relief was asked, but was a statement that thirteen additonal monthly installments of rent had accrued to plaintiff under the lease, since the institution of the original suit for the installment of rent then due for August, 1895, and a judgment was asked for the entire sum of $700 on the fourteen installments of rent at that date due, instead of for fifty dollars, the amount for

which judgment was claimed in the first petition for the one monthly installment at that time due.    The allegation of the amended petition that defendant refused to pay the rent due under the contract of lease for the month of September, 1895, or any other subsequent months, was in no sense a statement of the continuation of the wrong done by defendant in refusing to pay the rent sued for in the original petition for the previous August.    The evil of the act complained of in plaintiff's original petition was complete as soon as defendant refused to pay the August installment of rent due under the lease, and the refusal by defendant to pay the next succeeding monthly installment did not increase the liability growing out of the refusal to pay the August installment, but created another cause of action in favor of the plaintiff for that month's rent, and so on for each succeeding month thereafter down to the time when plaintiff's amended petition was filed. The wrong complained of in the original, as well as in the amended petition filed by plaintiff, was not that the defendant unlawfully took possession of and continued to hold the land in question to her damage in the sum of fifty dollars per month.    That right defendant had by contract from plaintiff's devisor.    The wrong that plaintiff suffered was, that defendant refused to pay her the fixed monthly rental of fifty dollars for the use of the land under the terms of the lease by which it was held, and each refusal to pay the monthly installment of rent as it fell due under the terms of the lease, constituted a complete cause of action in favor of plaintiff without regard to and independent of the question of her damages caused by defendant's refusal to pay some previous monthly installment of rent.

In plaintiff's original petition, as in that part of the amended petition left after the motion to strike out had been sustained, a complete cause of action for the fixed monthly

rental of fifty dollars for the use of plaintiff's land, for the month of August, 1895, was stated.   It needed and could receive no aid from a further amended or supplemental statement, that defendant had refused and failed to pay the next thirteen monthly installments of rent due, for the use of the same land, since the suit for the August installment of rent had been instituted.   Each monthly refusal to pay rent after August, 1895, was an independent wrong in and of itself, and could in no sense of the term be deemed or considered as a continuation of the first wrong for which suit had originally been instituted.

While our code is most liberal in permitting amendments of pleadings, and the courts most generous in construing its privileges in that regard, it has never been held that under the right to amend, a new, independent or additional cause of action could be brought into a case to that originally declared upon in the first pleading, as was sought to be accomplished by that part of the first count of plaintiff's amended petition stricken out on motion.   I have addressed myself wholly to the errors of the first count of plaintiff's amended petition for the reason that the effort of its author was directed more to its defense than to that of the last two counts, which seem to have been practically abandoned to their fate.   The simple statement of what was sought by the second and third count of the amended petition filed by plaintiff, is the completest exposition of its error.   Its recitation is its strongest condemnation.

How, to a cause of action, wherein judgment is sought upon one fixed installment of rent for fifty dollars, and the royalty alleged to be due under the terms of the lease in question, for the one month of August, 1895, an amendment, asking that an accounting for all coal mined by defendant under the lease in question from the date of the death of plaintiff's

husband in March, 1894, up to the time of the date of the filing of the amended petition be taken and the plaintiff be allowed a royalty on all coal so found to have been mined at the rate of 6 1-4 cents per ton, as sought by the second count of said amended petition, could be made, we are at a loss to conjecture. Equally as incompatible is the relation of the cause of action stated in the original petition, to the cause of action stated in the third count of plaintiff's amended petition. By the third count plaintiff sought to recover as residuary legatee under her husband's will, royalties, which it is alleged had accrued under the lease in question on account of coal mined by defendant prior to the death of plaintiff's husband, of which no accounting had been made, in his lifetime. The claim, in the second count of plaintiff's amended petition, for an estimated royalty of $1,500, computed upon the basis of 6 1-4 cents per ton on all the ore mined by defendant from plaintiff's land from August, 1895, to the time of filing the amended petition, is, however, no less a new and distinct cause of action from that contained in the original petition, than the claim for the thirteen monthly installments of fixed rental contained in the first count of plaintiff's amended petition alleged to have become due since August, 1895, and the date of the filing of the amended petition.

It certainly ought not seriously to be contended that the new matter pleaded in the second count of plaintiff's amended petition simply enlarged the extent of relief sought in the original petition, and that on account thereof it was permissible under section 2104, Revised Statutes 1889. It, too, is the statement of a wholly new and independent cause of action, that had its birth in the existence of a state of facts that came to life after the filing of the original petition. As plaintiff has offered no suggestion for the existence of the

second and third count of her amended petition, we will give without further comment our approval of this elimination by the trial court on the motion to strike out. It follows from what has been said that the appeals of both the plaintiff and defendant, taken herein, are without merit, and the judgment of the trial court will be affirmed.

All concur.