## Saylor et al. v. Howard et al.

(Decided June 4, 1929.)

LEE & SNYDER for appellants.

C. B. SPICER for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON— Affirming.

This case turns on the right of the lessors to collect minimum royalties on a coal lease. On October 10, 1917,

appellees leased to J. B. Eberlein a large tract of coal land for the full term of 25 years as set out in the first paragraph of the lease ''for and in consideration of the rents.'' The lease, among other things, contained these provisions:

''The lessee agrees to enter upon said premises within thirty days from this date and begin the construction of a mining plant, and agrees to pay the lessor as a royalty ten cents (10c) per ton on each ton of two thousand pounds of coal mined and removed from said premises, by the lessee or his assigns, and further agrees to mine and remove from said premises all workable, mineable and merchantable coal which can be practicably mined at a profit in, on and under said boundary of land; all of which coal mined under this lease shall be the absolute property of the lessee, his heirs or assigns.

''The lessee further agrees that after the expiration of one year from the date hereof, he, his heirs or assigns will mine or cause to be mined not less than six thousand tons of coal from said leased premises for each year, during the life of this lease or until the workable, mineable and merchantable coal, as above specified, is removed, and agrees to pay the lessors the aforesaid royalty, ten cents (10c) per ton thereon as a minimum royalty under this lease, but lessee is to pay the *royalty* at ten cents (10c) per ton upon all coal mined, provided however, that any amount paid on royalty in excess of the minimum above set forth in any one year, the said excess shall be applied to the payment for any shortage of the minimum that may be mined in any subsequent year.

''At the expiration of this lease, if the workable, mineable and merchantable coal, aforesaid, is not all removed, the lessee, his heirs or assigns are to have the right of renewal thereof for the same length of time provided herein or until said coal is removed before the expiration of twenty-five years, then this lease is to terminate and the leased premises are to be turned back to the lessors or their assigns, to include all houses constructed thereon, but the lessee is to have the right to remove from said premises all steel rails and all other equip-

ments, machinery and personal property of whatever character placed thereon by him or his assigns, provided all royalties are paid; and royalties herein provided for are agreed to be a lien upon all property placed on said premises by the lessee or his assigns.''

"It is further agreed that the lessee or his assigns is to have the free right to remove all the coal embraced in a lease from Andrew Saylor to L. E. Hensley which lease has been purchased by the lessee herein and which is to be assigned to him, over the leased premises herein described."

Eberlein transferred the lease to the Harlan Block Coal Company, and on February 14, 1918, a supplemental contract was made between appellee and it by which it released a part of the land described in the lease and accepted in lieu thereof certain other land described in the supplemental contract more suitable for the erection of houses, and under this supplemental contract it took possession of this land and erected a number of houses on it. The plant was put in and operated for some time. The lease was transferred to various parties, and finally became the property of C. W. Schwenger, who transferred it to appellants on December 16, 1920. At the time they took the transfer of the lease from Schwenger, all the machinery had been removed from the entries on the leased premises and no work had been done in removing coal therefrom for some time, and there has been no coal removed from the leased premises since the assignent of the lease to appellants, but appellants have remained in possession of the houses above referred to and have been conducting mining operations on the Hensley lease, which adjoins, carrying the coal over this land and using in connection with their mines the houses heretofore built thereon. The circuit court on these facts gave judgment for the leassors. The lessees appeal.

Appellants introduced proof showing that all the workable coal at present prices was removed some years before they bought the property, and that after this and in this condition of things the machinery was all moved from the mine. They insist that the exhaustion of the coal, as a matter of law, released the lessee from the payment of minimum royalties. Muncey Coal Co. v. Muncey, 206 Ky. 638, 268 S. W. 293, is relied on. But the lease in that case was unlike the lease here, in that it contained

provisions not contained in this lease. There are no provisions in this lease releasing the lessee from liability from the minimum royalty as long as they keep the property. Royalties contracted to be paid the lessor for the use of coal property are regarded in this state as rents. Caudill Coal Co. v. Solner Mining Co., 198 Ky. 243, 248 S. W. 533. The lease of land for coal imposes a great burden on the reversion, for the owner can make no use of the surface of the land inconsistent with the rights of the lessee. It is therefore very commonly provided in such leases that a minimum royalty shall be paid whether any coal is gotten out or not. The reason for this is to require diligence in the lessee in getting out coal and also not to burden the lessor's reversion longer than necessary. Under a lease like that in controversy, the minimum royalty is simply the consideration paid for the use of the property. 40 C. J. sec. 1102, p. 728. The lessee cannot retain the property and refuse to pay the consideration. In the case at bar the lessees, as the coal was exhausted, might at any time have surrendered the land to the lessors, but this they did not do. They continued to use the land in connection with the lease they were operating and continued to occupy a number of miner's houses built on the land and enjoy the rents therefrom. They could only terminate their liability for minimum royalties by surrendering the property, as provided in the lease. The purpose of requiring a minimum royalty is to protect the lessor from an unnecessary retention of possession by the lessees. Both the parties so construed the lease by their conduct and in the action brought by the lessors to cancel the lease, as therein provided, for nonpayment of the royalty, and this is the natural construction of its terms. In Barney v. Sword, 226 Ky. 728, 11 S. W. (2d) 920, the judgment turned on other facts and a provision of the lease not contained in the lease here in controversy. In Wilson v. Philadelphia Co., 210 Pa. 484, 60 A. 149, the court thus stated the rule:

"We again say that when the right of possession for operating purposes has been acquired, as here, by a successful search for the product, the lessee becomes answerable for the stipulated rental according to the terms of the agreement and is relieved of that liability only by showing payment, or notice to the lessor, either written or verbal, of aban-

donment.. As neither was shown in this case, we decline to disturb the verdict. And it is a wholesome rule tending to promote certainty in the determination of disputes in this class of contracts. To same effect, see Lennox v. Coal Co., 66 Mo. App. 560; Id., 158 Mo. 473, 59 S. W. 242.

The stipulated rental or consideration for the lease here was the minimum royalty, and the fact that it was named in the lease minimum royalty does not affect the legal effect of the instrument.

Judgment affirmed.