LOGAN COAL AND TIMBER ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 93381, 99976. Promulgated August 14, 1940.

*E. Spencer Miller, Esq.*, for the petitioner.

*Brooks Fullerton, Esq.*, and *David B. Herman, Esq.*, for the respondent.

532

OPINION.

DISNEY: Section 351 of the Revenue Act of 1934 and sections 351, 352, and 353 of the Revenue Act of 1936, as amended by the Revenue Act of 1937, impose surtaxes on undistributed income of personal holding companies. The 1934 Act and the 1936 Act, prior to the amendment, defined a personal holding company, to the extent material here, as a corporation deriving a specified percentage of its gross income from "royalties, dividends, interest, annuities * * *."

Sec. 351 (b) (1). Section 353 (a) and (b) of the Revenue Act of 1936, applicable to the taxable year 1937 (sec. 3, Revenue Act of 1937) contain a similar definition, excluding, however, mineral, oil, and gas royalties. Such income and rent income are covered by subsections (g) and (h) of section 353, reading as follows:

For the purpose of this title the term "personal holding company income" means the portion of the gross income which consists of:

* * * * * * *

(g) RENTS.—Rents, unless constituting 50 per centum or more of the gross income. For the purposes of this subsection the term "rents" means compensation, however designated, for the use of, or right to use, property; but does not include amounts constituting personal holding company income under subsection (f).

(h) MINERAL, OIL, OR GAS ROYALTIES.—Mineral, oil, or gas royalties, unless (1) constituting 50 per centum or more of the gross income, and (2) the deductions allowable under section 23 (a) (relating to expenses) other than compensation for personal services rendered by shareholders, constitute 15 per centum or more of the gross income.

Questions relating to the taxability of petitioner, an association, as a corporation, the ownership of its stock, and the general source of its income, have been disposed of by admissions of the petitioner. The disagreement of the parties is on the character of the income. In his determination of the deficiencies the respondent held that the income constituted royalties paid under the leases, and, therefore, not rents, as reported by the petitioner. Petitioner alleges such action to be erroneous. The issue is thus narrowed to the question of whether the income constituted rent or royalties.

Neither the 1934 Act nor the 1936 Act, prior to the amendment, included, within the statutory definition of a personal holding company, a corporation deriving income from rents; hence if the income derived from the leases in 1934, 1935, and 1936 represents rent money, the respondent's action is error. The amended 1936 Act, governing the taxable year 1937, includes, in the definition of a personal holding company, corporations receiving income from rents and also corporations receiving mineral royalties. The income of petitioner in 1937 from the leases was in excess of 50 percent of its gross income and, accordingly, subsection (g) of section 353 applies, and the amounts do not constitute personal holding company income, if the income constitutes rents. If the income represents royalties, subsection (h) governs, and it is personal holding company income, petitioner having admitted that the deductions under section 23 (a), other than compensation for services rendered, were less than 15 percent of its gross income.

The petitioner contends that *Von Baumbach* v. *Sargent Land Co.,* 242 U. S. 503, is authority for a ruling here that the payments made under the lease agreements were rents. Among the issues raised by

the taxpayers in that case was the question of whether the moneys received from the lessees under contracts for the mining of ore in Minnesota constituted gross income, or whether they represented, in whole or in part, the conversion of ore into money. The Court said: "The decisive question in this case is whether the payments made as so-called royalties amount to income so as to bring such payments within the scope of the Corporation Tax Act of 1909." The real question, as thus stated by the Court, was in effect whether the payments were income or a return of capital, and did not include, if the former, the narrower question whether the amounts were rents or royalties. In arriving at its conclusion that the payments were subject to tax, the Court did not decide that the amounts "were income, since they were rents" as alleged by petitioner. In discussing the issue before it, the Court first said that "We think that the payments" were not the proceeds of a sale, "but, in view of the terms of these instruments, were in fact *rents or royalties*," and then concluded that the corporation was subject "to the tax upon its income derived from the *royalties* under these leases." (Italics supplied.) It thus appears that, except for the use of "royalties" last above quoted, the Court did not indicate whether the income was rents or royalties. We think the use of the term was general and not definitive. Royalties are income.

Neither is *United States* v. *Biwabik Mining Co.*, 247 U. S. 116, also relied upon by petitioner, decisive. The question there was whether the value of ore in place was deductible from gross income under the Corporation Tax Act of 1909. The Court said that in deciding the *Sargent Land Co.* case, *supra*, it pointed out that the Minnesota courts held instruments of the nature involved therein to be leases "and that the royalties agreed to be paid were rentals in compensation for the privileges granted the lessee." Thus it is seen that the Court uses both terms. The case involved lessees, not, as here, a lessor, and there was no occasion for the Court to decide whether the payments made by the lessees for the right to mine the ore were royalties or rents. The District Court, whose judgment the Court affirmed, referred to the payments as royalties, without, however, any need to rule upon the precise character of the consideration.

*Bankers Pocahontas Coal Co.* v. *Burnet*, 287 U. S. 308, not cited by either party, is a case similar to the proceedings relied upon by the petitioner. There the payments made by the lessee to extract coal from lands situated in West Virginia were referred to as royalties in deciding the question of whether the moneys received were for capital assets or constituted ordinary income.

Another case cited by petitioner to support its theory that the payments made under the contracts were rents is *Raynolds* v. *Hanna*, 55 Fed. 783. It is like the Supreme Court cases just referred to, the

issue having been whether amounts paid under an agreement for the privilege of entering upon and mining coal from certain lands should be regarded as income or corpus of the estate of a decedent. The court said that "it is not material that the rental to be paid to the lessee is called 'royalty,' which is perhaps the most appropriate word where rental is based upon the quantity of coal or other mineral that is or may be taken from the mine", and then remarked that "But, aside from all this, the money received under the contract, whether called 'royalty' or 'rent,' is clearly 'income or increase' of the estate collected by the executors." This language discloses recognition by the court of the immateriality of deciding the precise character of the payments.

The language used by the courts in the above cases can not, under the circumstances, be regarded as a ruling upon whether the payments made under the leases were rents or whether they were royalties. *Bingham* v. *United States*, 296 U. S. 211; *Keeler* v. *Commissioner*, 86 Fed. (2d) 265.

In the recent case of *Kiesau Petroleum Corporation*, 42 B. T. A. 69, we were required to decide whether certain payments made to the taxpayer out of the proceeds of oil wells in payment of equipment furnished to drill the wells constituted royalties within the meaning of section 351 (b) (1) of the Revenue Act of 1934. We decided that Congress used the term in its ordinary, normal, and familiar meaning and that dictionary definitions disclosed the word "royalty" to mean "an interest reserved by the owner in return for permission to use the property owned." The dictionary definitions relied upon embraced the products of coal mines. Other authoritative definitions are, in substance, the same. Bouvier defines a royalty as "A payment reserved by the grantor of a patent, mining lease, etc., and payable proportionately to the use made of such right." Numerous cases are cited to support the following definition of the term appearing in Black's Law Dictionary: "A payment reserved by the grantor of a patent, lease of a mine, or similar right, and payable proportionately to the use made of the right by the grantee." In *Homestake Exploration Corporation* v. *Schoregge*, 81 Mont. 604; 264 Pac. 388, the court said: "The word 'royalty' has a definite and well understood meaning in mining and oil operations. It means a share of the product or profit paid to the owner of the property." To the same effect is the following definition appearing in *Kissick* v. *Bolton*, 134 Iowa, 650; 112 N. W. 95: "The word 'royalty,' as employed in the contract, means the share of the profit reserved by the owner for permitting the removal of the coal and is in the nature of rent." In *Raynolds* v. *Hanna, supra*, the court said that the term royalty is "perhaps the most appropriate word where rental is based upon the quantity of coal or other mineral that is or may be taken from the mine."

The term "rent" has been defined in various ways. Bouvier defines it as "A return or compensation for the possession of some corporeal inheritance. A certain profit, either in money, provisions, or labor, issuing out of lands and tenements, in return for their use." The definitions in Black's Law Dictionary include the following:

A certain profit issuing yearly out of lands and tenements corporeal; a. species of incorporeal hereditament. 2 Bl. Comm. 41. A compensation or return yielded periodically, to a certain amount, out of the profits of some corporeal hereditaments, by the tenant thereof. 2 Steph. Comm. 23. A certain yearly profit in money, provisions, chattels, or labor, issuing out of lands and tenements, in return for their use. 3 Kent, Comm. 460.

Federal courts have said that "Rent is a sum stipulated to be paid for the use and enjoyment of land." *In re Roth & Appel*, 181 Fed. 667; *In re Mullings Clothing Co.*, 230 Fed. 681.

Definitions of other courts are to the same effect. *Fiske* v. *Brayman*, 21 R. I. 195; 42 Atl. 878; *Kendall* v. *Uland*, 83 Neb. 527; 120 N. W. 152; and *Saulsberry* v. *Saulsberry*, 162 Ky. 486; 172 S. W. 932.

The term "rents" for the purpose of section 353 (g), applicable to the year 1937, means "compensation however designated, for the use of, or right to use, property." This statutory definition is in agreement with the judicial and other definitions set forth above.

There is no need here to point out all of the distinctions between the terms "rents" and "royalties." One difference of importance disclosed by the various definitions is that royalties, unlike rent, are paid according to the use made of the rights granted by the owner. As stated by the court in *Western Union Telegraph Co.* v. *American Bell Telephone Co.*, 125 Fed. 342, "Rents in their ordinary signification are not limited as royalties in their ordinary signification; that is to something proportionate to the use of the patented device."

The amounts involved in the question here were paid by the lessees in proportion to the use made of the principal right granted by the contracts, that is, on the basis of the quantity of coal mined from the properties. Any minimum royalties paid are not an exception, since the difference between the amount paid on a tonnage basis and the minimum payment was recoverable in subsequent years by mining free of charge coal in excess of the minimum requirements.

Numerous authorities, mostly textbooks, are cited by the respondent to show that the right of the lessees to deplete the leased premises of coal is a right of *profit à prendre*, an incorporeal hereditament, and that as liability for rent issues only out of an estate in land, the payments here do not constitute receipts of rent. Petitioner does not challenge the general conclusions reached by the respondent from the authorities cited. It contends that the point is not important, since the leases granted rights in addition to that of mining coal.

The leases gave the lessees the right, among other things, to use the surface of the land, together with so much of the timber, stone, sand,

clay and water as was necessary to conduct mining operations. They also had the right to manufacture on the premises coke and other by-products of coal and the privilege of conducting a general mercantile business. The lease of January 1, 1909, gave the Red Jacket Jr. Coal Co. the additional right to transport over, through, and on the land other coal owned or acquired by the lessee. The right to manufacture coke and other byproducts of coal was not exercised and it does not appear from the record to what extent the other privileges were exercised. Referring to the right to manufacture coke and other products, or byproducts of coal, the conduct of a general mercantile business, transportation of coal from other lands over the leased lands, and manufacture thereof into coke or other coal products on the leased premises, and the right to have the lessor join the lessee in conveying railroad rights of way, a witness for the petitioner stated that the rights were "essential ones in the conduct of any mining operations." Obviously, most of the rights were essential to the lessee's operations, and therefore they do not affect the question as to whether payments made were royalties, or rents. We think, however, that it can hardly fairly be said that transporting coal from adjacent lands over the leased lands is essential to mining the lease. Does the grant of the right to such transportation constitute reason for considering the payments as rents? This is the prime question before us. The etymology of the word royalty shows its original meaning to be the king's share; and later, the owner's share. The petitioner in receiving the payments made received its share on each ton of coal. Such payments on a per unit basis are royalties, unless the fact that they are consideration, not only for the coal mined, but other privileges, particularly that of transporting other coal, alters the situation and converts the nature of the payments into rentals. Of course, in a general sense, all such payments partake of the nature of rents, but our question is whether, more definitely and under the language of the statute as to personal holding companies, they are "royalties."

In *Vandalia Coal Co.* v. *Underwood*, 60 Ind. App. 675; 111 N. E. 329, we find this question discussed as follows:

Mining leases are divided into two classes, those requiring the payment of a fixed rent known as dead rent at stated intervals, and those providing for payment of royalty with requirement that a stipulated amount of the mineral should be mined; hence a lease providing for payment of royalty, but declaring that in case a certain amount of coal should not be mined the lessors should receive $600 per annum, is one for the payment of royalty.

The case was one to collect a minimum payment of $600 per annum provided for in the lease, after the coal was exhausted, because the lessee continued, after such exhaustion of coal, to remove through the leased land, mineral found on adjoining land, as it had a right to do, free of charge, under the lease. The court, in denying recovery after

exhaustion of the coal, contradicts any idea of the payments being rent based, as claimed in the instant case, upon use of the lease for transportation of coal from other lands.

In *Robinson* v. *Stover*, 320 Pa. 308; 182 Atl. 145, the Supreme Court of Pennsylvania considered a mining lease which, in addition to providing a royalty on coal mined, provided also for payment of one-half cent per ton on coal mined on other lands and transported over the leased lands, and held that the lessee must pay "royalties" on such coal transported after exhaustion of the coal on the leased land. The court remarked that such an agreement, in that industry, is called a "wheelage clause." In *Tustin* v. *Philadelphia & Reading Coal & Iron Co.*, 250 Pa. 425; 95 Atl. 595, the same court considered a situation similar to that in the instant case. Therein the lease provided for a "rent or right of way of 5 cents per ton on all coal mined from other adjoining lands and carried through the said demised premises", as well as minimum payments for mining coal on the lease. It was held that payment must be made not only of the minimum amounts for mining coal, but also for transporting other coal, which could not be considered included in the minimum royalty. In *Siler* v. *White Star Coal Co.*, 190 Ky. 7; 226 S. W. 102, a Kentucky case, it was contended that, although the payment of minimum royalty on coal mined each month was subject to reduction in case of epidemics, riots, insurrections, strikes, etc., yet, since the contract was more than an ordinary lease because it granted easements and privileges necessary for mining other land, the minimum amounts were payable each month, regardless of such contingencies as strikes, it being "urged that the payment of the minimum royalty each month, regardless of the contingencies provided for in paragraph 9 (as to strikes, etc.), was the consideration for such easements and privileges." This seems essentially the same contention as made by the petitioner herein. The court denied the relief prayed for, in effect, holding that the payments were not mere rents for the use of the land, including the transportation over it of other coal, for if they had been such rents, and not royalties upon production, the provision as to strikes would not have affected them. In *Lennox* v. *Vandalia Coal Co.*, 158 Mo. 473; 59 S. W. 242, it was held that where a lease provided that $50 per month should be paid for mining coal on the plaintiff's land and for hoisting coal mined from adjoining land through a shaft on the lease and that the defendant would continue operation until exhaustion of coal on the leased lands and pay a minimum royalty on coal mined, use of the land, after exhaustion of the coal, for hoisting coal from other lands rented, rendered the defendant liable to pay $50 per month rent.

From the above cases it would appear that, if provision is made in a coal lease for definite payments for the use of the land for trans-

portation of coal from other lands under a "wheelage clause", such payments may be true rents and not a part of the royalties based upon the amount of coal mined from the lease involved. In the instant case, however, the only consideration provided in the lease was payment computed on the basis of coal mined. (Minimum payments were, in effect, advance royalties for coal which could later be mined.) No separate consideration on account of transportation of coal from other lands was provided in the lease. We think it obvious that the prime consideration for the contract was the payment based upon coal mined and we hold that such payment constituted royalties within the intent and meaning of the revenue statutes here being considered. The fact that the lease terminated upon exhaustion of merchantable coal, regardless as to whether the 50-year period had terminated, leaving the lessee no right to continue to transport coal from other lands across the lease, and in fact leaving it no way of calculating payments for such right, indicates, in our opinion, that the payments made up to the time of exhaustion of the coal can not be said to be as a whole rents for the use and occupation of the land, as petitioner contends. If we should assume that some part of the consideration for the payments made to petitioner was for the privilege of transporting coal from other lands, the record herein contains no evidence upon which to base a division between royalties and any rent for the transportation privileges, or to find error on the part of the respondent in treating the payments in question as royalties.

The petitioner filed corporation income and excess profits tax returns on Form 1120. It does not appear and no contention is being made that it filed returns as a personal holding company. Under the circumstances the imposition of delinquency penalties is mandatory. *Collateral Mortgage & Investment Co.*, 37 B. T. A. 630; *Rotorite Corporation*, 40 B. T. A. 1304.

*Decision will be entered for the respondent.*