## McKinney et al. v. Fox.

October 24, 1947.

Ray C. Lewis, Judge.

660

J. R. Llewellyn for appellants.

Allen Harrison and Lewis & Weaver for appellee.

OPINION OF THE COURT BY CLAY, COMMISSIONER— Affirming.

This suit involves the ownership of one hundred and twelve acres of land in Jackson County. Suit was filed by appellee to have cancelled as a forgery a purported deed to G. W. McKinney which cast a cloud on appellee's title to a five-eighths undivided interest in the property. By subsequent pleadings appellee prayed that his title be quieted and the land sold at a judicial sale. The Chancellor upheld appellee's title to the undivided interest, and directed the land be sold.

The only question we consider it necessary to determine is whether or not appellee purchased his property interest in good faith for value without notice of the deed to G. W. McKinney.

Appellee obtained his deed from one William Gay on November 25, 1943. William Gay had purchased various interests in the land from the heirs of one James McKinney. James McKinney was the father of G. W. McKinney, and had died intestate about the year 1919.

The controversy arises out of the fact that G. W. McKinney asserts ownership by virtue of a fee simple deed to him dated April 6, 1915, allegedly executed by James McKinney and his wife. This deed was not recorded until December 4, 1943, a few days *after* appellee had purchased his interest in the property. His title is superior to that of G. W. McKinney if he was an innocent purchaser for value without notice of this 1915 deed.

Appellee alleged and attempted to prove that this deed to G. W. McKinney was a forgery, and there are a number of circumstances brought out by the evidence

which cast some suspicion on the instrument. However, it is not necessary to determine this question, nor does the failure of the Chancellor to cancel this deed affect appellee's title.

From the record it is clear that appellee was a purchaser for value. Did he purchase his interest in good faith without actual notice of the prior conveyance?

It is the policy of the law that deeds to real estate should be made a matter of record. Where an owner fails to record his deed, there is a presumption that a subsequent purchaser who buys the property and pays for it has no notice of an infirmity in the title; and unless there is substantial proof of facts which would put a reasonable man on notice, the subsequent purchaser has the better right. Terry v. Ellsworth, 236 Ky. 54, 32 S. W. 2d 558.

The deed from James McKinney and wife to G. W. McKinney in 1915 recited a consideration of $75, and provided that it should not be recorded until after the death of the grantors. This latter provision, of course, could not affect the rights of a subsequent purchaser without notice. James McKinney died a few years after the execution of this deed, and his wife died in 1944. The deed was recorded December 4, 1943.

Three witnesses for appellants testified in substance that appellee had actual notice of G. W. McKinney's claim. Frank Parsons, his son-in-law, stated that about two months before appellee bought the property he told the witness he had heard that G. W. McKinney had a deed to it. This witness' testimony is qualified, however, in that he did not know whether appellee was talking about the deed from James McKinney or other deeds which G. W. McKinney had obtained from two brothers and a sister involving the same property. Tony McKinney, a nephew, stated he told appellee a few days before the latter purchased the property that he had better be careful as "Uncle George has got a deed for that." Daniel Moore, an uncle, testified he told appellee that he would be buying a law suit if he took the land, as G. W. McKinney claimed he had a deed to it.

In addition to the above testimony, there was ad-

ditional evidence that William Gay, who sold the property, had notice of the G. W. McKinney claim, and there was some evidence appellee's father had this information.

On the other hand, appellee and William Gay both denied they had any notice of the G. W. McKinney deed or his claim. In support of their testimony, we believe the following facts are of importance: G. W. McKinney himself admits he never told appellee he had a deed to the property, although he had the opportunity to furnish this information. It is admitted by G. W. McKinney that he never told his brothers and sisters about this 1915 deed. It is shown by the evidence that subsequent to 1915, G. W. McKinney purchased the interests of two of his brothers and one of his sisters in this property, in three separate transactions, and had those deeds recorded. It is shown that at least until 1943 he had not listed this property as his own for tax purposes, and apparently one of his brothers and his mother had paid the taxes for many years.

In addition to the above evidence, there was further testimony to the effect that persons living near the land in controversy had not heard of G. W. McKinney's claim, and some of his brothers and sisters had not in thirty years learned about this deed. There are other facts in the case which throw suspicion on the existence of this 1915 conveyance and the manner of its execution.

In view of all the facts, the Chancellor was justified in concluding that at the time appellee purchased the property from William Gay, he had no notice or knowledge that would put him on inquiry concerning G. W. McKinney's claim to the property. It was therefore proper to adjudge appellee the owner of the five-eighths interest.

The judgment of the Jackson Circuit Court is affirmed.