## Ramsey et al. v. Yunker et al.

January 10, 1950.

Withers, Lisman and Withers for appellants.

Byron, Sandidge & Holbrook, McDonald and McDonald, for appellees. .

JUDGE KNIGHT—Affirming.

Almost twenty years ago appellants signed and acknowledged a written instrument which was duly recorded in the clerk's office of Webster County. The grantee was the Ivyton Oil and Gas Co., and its rights thereunder, by mesne conveyances, became vested in appellees S. L. Yunker and the Ashland Oil and Refining Co. Since the instrument must be construed as a whole, it will be necessary to copy it in full, omitting the descriptions:

"This deed of conveyance made and entered into this the 17th day of March, 1930 by and between C. L. Ramsey and wife, ——— Ramsey, hereinafter called party of the first part; and Ivyton Oil and Gas Company of Delaware, hereinafter called party of the second part;

"Witnesseth: That for and in consideration of $1.00 and other good and valuable considerations, the receipt of all of which is hereby acknowledged, the party of the first part does hereby grant, bargain, sell and convey unto the party of the second part, their heirs, representatives, successors and assigns, all of the oils and gases and all rights thereto subject to the exceptions hereinafter enumerated and insofar as said party of the first part may now own the same in, upon or over or hereafter found in, upon or under the herein described tracts or parcels of land together with the exclusive right to enter upon the said lands for the sole and only purpose of operating for, producing, storing and marketing oil, gas and gasoline, together with the right of way and servitude for pipe lines and all other rights and privileges necessary, incident to and conven-

ient for the economic operation of this land for the production of storage of oil, gas and gasoline with right to use free oil and water for such purposes and the right to remove any improvements placed or erected on the premises by the grantee.

"Grantee agrees to bury pipe lines in cultivated fields below plow depth when requested to do so and to pay for any damages thereon to growing crops while operating their lands for oil, gas or gasoline.

"Said oil and gas rights hereby conveyed being all the oil and gas rights pertaining to and underlying the following described tract of land;

"Lying and being in Webster County, Ky. aggregating 369.41 acres more or less and more particularly described in various deeds to the said party of the first part, which deeds are herein referred to for a more complete description of the property hereby transferred, the following lands to-wit: (Description omitted).

"Party of the second part also agrees to pay to the first party in addition to the consideration above mentioned One-eighth ($\frac{1}{8}$) of all the oil produced from the premises conveyed, same to be delivered free of charge to the grantor's credit in pipe lines when and as recovered; the second party further agrees that in the event oil is produced in commercial quantities from offset wells on adjoining property second party will drill to protect first party's interest in said oil.

"Second party further agrees that in the event gas is produced in commercial quantities on the property herein conveyed first party shall have the right to use gas free of charge for domestic purposes in one dwelling house on the property herein conveyed, said gas to be taken by first party from the well or wells at his own cost and at his own risk.

"To have and to hold the above described oil and gases with all the rights thereto as hereinabove enumerated unto the said party of the second part, its successors and assigns forever subject to the exceptions heretofore set forth."

The sole question involved in this appeal is the

proper construction of the above instrument. It is appellants' contention that it is only a lease covering the oil and gas, and in this suit they ask that it be so declared and that it be cancelled for failure of appellees to develop the lands for oil and gas. They pray that appellees be perpetually enjoined from casting any cloud on appellants' title to said oil and gas. It is appellees' contention that the above instrument is a deed conveying outright the oil and gas underlying the land described and they ask that their rights be so declared and their title thereto be quieted. The lower court sustained the contention of appellees, sustained their demurrers to the petition and dismissed it. Appellants prosecute this appeal from that judgment.

It is obvious that the above instrument has all the earmarks of an outright conveyance, containing the usual granting and habendum clauses and words of inheritance, and containing none of the words usually found in leases, such as the time covered by the lease or that any operations be begun or carried on within any specific time, or ever. It is true that this is not always a controlling feature and we have held that an instrument purporting on its face to be an outright conveyance may be in fact a lease, as in the case of Eastern Kentucky Mineral & Timber Co. v. Swann-Day Lumber Co., 148 Ky. 82, 146 S. W. 438, 441, 46 L. R. A., N. S., 672, cited and relied on by appellants. In that case, for a consideration of $1.00 and other valuable considerations, the grantors conveyed an undivided 7/8 of the minerals and timber on a certain tract, the grantor reserving the other 1/8 interest. The basis of the decision in that case was that the recited consideration of $1.00 was only a nominal one and the real and only consideration was the obligation upon the part of the grantees to give the grantor 1/8 of the profits. This court further said in that case that if there had been any other adequate consideration to support it, the grantor "would have parted by this conveyance with all right, title, and interest in the timber and minerals, and no delay in the development of the property on the part of the grantees would have conferred upon Spencer (grantor) or any person claiming under him the right to forfeit the contract or to insist that it had been abandoned. Nor would any effort to convert such a conveyance into a license or lease be approved by the courts."

In the case at bar there was a consideration other than the nominal sum of $1.00 recited in the instrument. It is shown in the answer filed by one of the appellees, and which is admitted by the demurrer filed thereto, that there was an additional cash consideration of $369.41 paid by the grantee to the grantors. This is at the rate of $1.00 per acre for the 369.41 acres involved and while this could be construed as a bonus for the execution of the lease, as appellants contend, especially if there were other compelling indications that the instrument involved was a lease, we think it is also an indication of a full and fair consideration for the rights granted in this instrument which purports to be an outright conveyance.

The only feature of the instrument being construed, which resembles the usual oil and gas leases, is that one which provides as an additional consideration that the grantor shall receive ⅛ of all the oil produced from the premises conveyed when and as recovered. However, it does not impose on the grantee the duty or obligation of drilling or beginning any kind of operation within any specific period of time, or ever. This is consistent with the idea that the conveyance was an outright one. It is merely a part of the consideration, contingent and deferred, and whenever the appellees see fit to develop the property and if oil is found, appellants will be entitled to their share under the contract as part of the consideration for the conveyance. Other provisions of the instrument, such as the one which requires that the pipe lines be buried below plow depth and the agreement to protect the lands against drainage by offset wells, are consistent with the parting of appellants with their title to the minerals and their desire to protect their remaining surface rights and their right to additional consideration measured by the amount of oil produced.

We think the most recent case from this court, Kentucky Natural Gas Corp. v. Carter, 303 Ky. 559, 198 S. W. 2d 311, 312, cited and relied on by appellees, is determinative of the issue involved in the present case. While there was a somewhat larger initial consideration paid in that case and only a ⅞ interest in the minerals was conveyed, the instrument was in substance and form substantially the same as the one here involved

including retention of a ⅛ interest in the minerals produced. There, as here, it was contended that the instrument, though purporting to be a deed, was in reality a lease. What was said there in construing the instrument to be a deed is applicable here:

"We must look to the entire instrument with the view of ascertaining the intention of the parties. As said in the case of Duncan v. Mason, 239 Ky. 570, 39 S. W. 2d 1006, if the effect of an instrument is to sever the estate and to vest the title to a certain part of it in another, it is a deed no matter what the parties may call it. The instrument in question is designated as a deed in both the granting and habendum clauses. It was pointed out in the Duncan case also that, where the words, 'grant,' 'bargain' and 'sell' are used in connection with minerals in place, and words of inheritance are added, it is presumed that the parties used them in their ordinary legal sense unless a contrary intention is clearly shown. In the absence of a contrary intent these terms will vest in the grantee the entire ownership of the minerals."

In the present case as in the Carter case, supra, the deed purports to be an absolute conveyance of the minerals with the usual granting and habendum clauses and words of inheritance. It was made for a consideration which we cannot say was inadequate, and which included payment out of the oil that might be produced. There was no requirement that any operation be carried on within any specific time. The title to the minerals having vested, their title is not subject to abandonment by disuse. It is well settled that a deed will be construed most strongly against the grantor rather than the grantee because the grantor has the selection of his own words and it is within his power to make those words clearly say what he means and to protect his future interests. If the grantors failed to do so in the present case, they have no just complaint.

Since the judgment of the lower court is in conformity with the views herein expressed, it is affirmed.