## DUNCAN et al. v. GREENE et al.

Court of Appeals of Kentucky.
Dec. 19, 1952.

Woodward, Bartlett & McCarroll, Owensboro, for appellant.

King & Craig, Henderson, for appellee.

MILLIKEN, Justice.

In an action to quiet title to 59¼ acres of land in Webster County, Kentucky, the appellees, who were the plaintiffs below, obtained a judgment which held they were the owners in fee simple of all the oil and gas in the tract and which perpetually enjoined the appellants from asserting any claim to the ownership of the oil and gas or any other interest in the land.

The stipulation of facts reveals that prior to June 26, 1889, one G. W. Walker was the owner in fee simple of the land involved in this action, and that on that date he executed an instrument in writing, the legal nature of which is the pivotal point in this case. About ten months later, on April 19,

1890, G. W. Walker and his wife, Sally, executed a deed to R. L. Tapp, predecessor in title of the appellees, in which it was stated: "This conveyance does not include gas and mineral interests deeded to other parties, but does include my stock in gas and mineral interests." The prior instrument of June 26, 1889, is the only document of record within the meaning of the quoted language, and it is the source or basis of the appellants' claim to oil and gas privileges in the land.

By the instrument of June 26, 1889, G. W. Walker and his wife, Sally, joined owners of neighboring tracts of land in an agreement with certain individuals by which they attempted to "sell, grant, alien, convey and confirm unto the parties of the second part, their heirs, assigns, executors and administrators, the sole and exclusive right and privilege to sink or drill wells for the purpose of procuring natural gas, salt, and salt oil water and the right to erect derricks, engine houses, trainways, kilns, mills, furnaces and all necessary machinery and appliances for said purposes and the right to remove said products; also the right to construct gasometers, lay and maintain conduit pipes of any kind and the right to transport to any point desired the aforesaid products when found and the ownership of said products when procured upon or in the lands hereinafter described; the aforesaid rights privileges and grants are made in and to the following described lands lying in Webster County, Kentucky, reference is made to the deeds of the parties herein named recorded in the Webster County Clerk's Office, for particulars description and quantity."

The lands referred to in the indenture are identified as that of R. A. Gibson, J. D. Christopher, Wm. White, P. J. Lynn, G. W. Walker (being the land involved here), J. A. Gibson and G. E. Jones, and contained several hundred acres. Other pertinent parts of this indenture read:

"The aforesaid grants rights and exclusive privileges are made in consideration that second parties undertake hereby to begin in good faith to drill one or more wells on some parts of the territory of lands herein described within six months from the date of this grant and will procure issued within said time to each of said first parties non-assessable full paid up capital stock of the Trenton Rock Natural Gas Mining and Manufacturing Company of Henderson, Ky. * * *

"It is agreed and understood that should said second parties or other assigns fail or refuse to begin as aforesaid within six months to drill in good faith then this grant shall be null and of no effect otherwise to remain absolute. * * *

"It is understood and agreed that if at the end Eighteen months, gas, salt, salt water or oil is not found in paying quantities on the aforesaid lands of R. A. Gibson then this grant shall be null and void and of no sort of effect. * * *

"But said first party hereby binds himself not to lease or assign the right to any one to lease his the aforesaid privileges no (on) and to his lands to any other company or person within fifteen years—in case of a failure to find said products in paying quantities and the grant becoming null as aforesaid * * *."

The appellants take the view that the grant became absolute because it is stipulated that drilling began within six months and three wells actually were completed, two of which were on the land of R. A. Gibson. The appellants insist that the provisions that "if at the end of Eighteen months, gas * * * or oil is not found in paying quantities on the aforesaid lands of R. A. Gibson then this grant shall be null and void and of no sort of effect" must be confined in its application to the land of R. A. Gibson and is not applicable to the tracts of other grantors. Otherwise, they say, the eighteen months provision and the six months provision conflict. They declare that the provision whereby "said first party hereby binds himself not to lease * * * the afore-

said privileges" to any other party for fifteen years "in case of a failure to find said products in paying quantities and the grant becoming null as aforesaid" applied to the land of R. A. Gibson, which was in the very heart of the surrounding holdings. As a consequence of all this, the appellants contend that the rights of the present litigants under the instrument cannot be adjudicated without making the successors of all the other grantees in the 1889 instrument parties to this litigation.

In reply to the contentions of the appellants, the appellees declare that all the grantees of the 1889 instrument obtained was a "hunting license" for the purpose of procuring natural gas, oil, etc., and the ownership of such products when procured, and that the instrument did not sever the estate in oil and gas in place and vest title to it in the grantees; it conveyed only the oil and gas actually severed or procured and brought into possession. The appellees also point to the fact that all of the parties who appear as grantors are referred to as "of the first part" and that the name of R. A. Gibson was the first name to appear in the caption of the instrument. They say that the whole instrument was to become void if oil and gas in paying quantities was not procured within eighteen months, and that that time limit did not pertain to the land of R. A. Gibson alone, because the word "grant" when used in the instrument is not limited to any particular individual tract but refers to all of the grants in the instrument or to the instrument itself. The appellees explain the reference to the "lands" of R. A. Gibson in the eighteen months provision by the fact that Mr. Gibson was the first to sign the instrument and that other signatures were affixed at other times and places as specifically indicated by the terms of the instrument itself.

The instrument of 1889 was not skillfully drafted, but we agree with the appellees that it conveys no estate in the land—no interest in oil or gas in place, and, consequently, cannot be classified as a deed but is more in the nature of a contract for development of the property.

In Duncan v. Mason, 239 Ky. 570, 39 S.W.2d 1006, 1008, this court summarized the principles which we conclude are applicable to the case at bar when it declared:

"These litigants are unable to agree whether this contract is a deed or a lease. That is to be determined, not by what these parties called this contract (both of the instruments evidencing this contract are denominated therein as deeds), but by what the contract did. * * *

"If the effect of an instrument is to sever the estate and to vest the title to a certain part of the estate in another, it is a deed, no matter what the parties may call it."

In the case at bar, there clearly was no severance of an estate in the land. There was a privilege granted to reduce to possession, and to own the oil and gas actually extracted, not the oil and gas in place. In other words, no estate in the land was conveyed. Restatement of the Law of Property, Section 9. Here, the apparent purpose of the parties to the instrument was to get oil and gas production and share therein for their mutual benefit, to get the drilling actually started within six months and to give the project up as a bad job if oil and gas in paying quantities were not procured within eighteen months. It was the express purpose of the owners of the tracts "to form a large territory as near adjoining as may be practical" in order to protect their interests and those of the second parties who were entrusted with the development of the territory. It was the latter who had to supply the capital for the development, and, consequently, it was their financial loss if the development were undertaken and did not result favorably within eighteen months. Regardless of the fate of the venture, the landowners were to retain absolute ownership of their stock in the development corporation, Trenton Rock Natural Gas Mining and Manufacturing Company, and they agreed not to grant similar privileges to any other company or person within fifteen years. This agreed restraint afforded those persons who

had put up the capital another opportunity if future circumstances were inviting, and it correlatively prevented the corporation stock from being practically worthless. The fifteen year period passed many years ago, and there is no evidence of any attempt by the grantees to resume drilling in that period.

The case at bar is distinguishable from Gibson v. Sellars, Ky., 252 S.W.2d 911, in which we held that extrinsic evidence was not admissible to construe an exclusion in a deed which, we concluded, was not in itself ambiguous. There "the coal and mineral rights underlying said tract of land have been heretofore sold by the First Party and are not intended to be conveyed by this deed and are expressly excluded herefrom." An attempt was made to show that only the coal rights had been previously conveyed, and, as a consequence, they alone were intended to be excluded. We held that the exclusion was not ambiguous and therefore could not be altered by parol. In the case at bar, we do not have a reservation or exclusion, but merely a reference that "this conveyance does not include gas and mineral interests deeded to other parties * * *." It was proper to show, as has been done here, that there had been no conveyance of gas and mineral interests to other parties.

In view of our construction of the instrument of 1889 as a development contract or lease, we conclude it is no longer of any legal effect and, hence, it was not necessary to round up all the successors in interest of the grantees or second parties to that instrument and to make them parties to this litigation. Since the appellees introduced certified copies of deeds establishing their chain of title back to G. W. Walker, through whom both they and the appellants claim ownership to the oil and gas, and also established their open and uninterrupted possession of the tract, they obviously do not have to rely on the weakness of the appellants' claim of title in order to establish their own title and to maintain this action to quiet it.

The judgment is affirmed.