Ed HISLE, d/b/a Columbia Oil Company et al., Appellants,

v.

Clayton KELTNER et al., Appellees.

Court of Appeals of Kentucky.

June 1, 1973.

Kenneth H. Baker, Zirkle, Raine, Francis & Highfield, Louisville, for appellants.

Earl Huddleston, Columbia, for appellees.

CATINNA, Commissioner.

This is an appeal from a judgment of the Adair Circuit Court upholding an oil

and gas lease executed by Clayton Keltner and wife to Ed Hisle, while invalidating an option to lease adjoining property.

Keltner owned two tracts of land in Adair County, one comprising 135 acres and the other 95 acres. On March 12, 1971, Keltner leased the 135-acre tract to C. R. Moss and others, using a printed oil and gas lease form known in the industry as "Kentucky 88-Gas Provision." In a blank space at the bottom of this lease there was inserted the following:

"It is further agreed by and between the parties to this lease that the lessee shall have the first right and option to the ajoining (sic) lands of the lessor containing about 95 acres more or less. This option is for a period of two years at price to be agreed by lessor and lessee, and agreed by the lessor that lessee shall have first option on same."

On April 9, 1971, Keltner leased five acres of the 95-acre tract to Ed Hisle, again using the printed lease form. There was inserted in this lease the following:

"It is agreed that the lessee shall have a 60 day option on 90 ajoining (sic) acres, and the remainder of the Charlie Hindman tract. To exercise this option the agreed consideration shall be $10,000.00 for a one year term."

The Hisle lease provided that it should remain in force until April 15, 1971, and as long thereafter as oil or gas or either of them was produced from the leasehold estate. It further provided that if no well was commenced on the land on or before April 15, 1971, the lease would terminate as to both parties.

Prior to the lease to Hisle, C. R. Moss had drilled and subsequently plugged a well 350 feet deep on the five-acre tract. On April 14, 1971, Hisle commenced cleaning out this well. In the course of this operation, oil that had seeped into the old hole was bailed out. Hisle continued drilling operations until the middle of May of 1971 at which time the well had reached a depth

of approximately 850 feet, being the approximate depth of the oil-producing stratum in Adair County. Drilling operations were terminated temporarily, so Hisle claimed. In drilling the well to the 850-foot depth approximately thirty barrels of oil had been found and bailed out with the rig. None of this oil was ever sold. The well was not equipped with a jack and other equipment so that it could be pumped. At the time the operations terminated no oil was being produced from the well.

Hisle attempted to lease the adjoining 90 acres, relying on the option in the five-acre lease. He first gave Keltner a $10,000 check on a $5 bank account, and when this didn't work he tendered a certified check for that amount and a formal notice of exercise. Keltner refused to lease the 90 acres to him and shortly thereafter leased it to Statewide Oil and Gas Company. Keltner then filed an action in Adair Circuit Court for the purpose of quieting title to the five-acre tract, stating that Hisle's lease had expired. Two questions were before the court: first, the validity of the five-acre lease and, second, the validity of the option as written into the lease.

■ The Adair Circuit Court adjudged the five-acre lease to be valid and binding because Keltner had permitted Hisle to continue operations after April 15, 1971, without objection. The court further held that the option in the Hisle lease was invalid because the option in the Moss lease, as first set out, was in full force and effect during the entire term of the Hisle option. The court was correct in holding the option in the Hisle lease to be void, but consideration of the Moss option was unnecessary. Under no interpretation of the law could the option contained in the Hisle lease be enforced. All this option did was to grant lessee a right to lease the adjoining 90-acre tract without setting out any of the terms of the lease to be executed.

The so-called rental of $10,000 was nothing more than the price of the privilege to

exercise an option. It did not in itself contribute to the definiteness and certainty of the terms of the option. The option made no provision for rentals, the time of the commencement of a well, or deferred rental payments. The so-called option is absolutely silent as to any terms to be contained in the lease.

In examining the requisites of an option, we find the following:

"An option contract must be complete and certain in its terms, that is to say, the parties and its subject matter must be identified by it, and the terms and provisions of the contract must be stated in writing, if required to be in writing, or established by competent evidence, if not required to be in writing, with that certainty and definiteness which will enable a court to determine that the parties, by an election thereunder, have concluded an agreement and also what the exact terms of that agreement are." James on Option Contracts, Section 209, page 78.

■ The real property involved must be so described in the writing that it can be identified from the writing itself; parol evidence is not admissible to supply the description. We are committed to these general rules of law in regard to option contracts. Walker v. Keith, Ky., 382 S. W.2d 198 (1964). The option in question, if it is an option, is void for uncertainty and indefiniteness and cannot be enforced.

■ Hisle's claim to the five-acre lease borders upon the absurd when we find his contention to be that there had been production under the lease and, therefore, it did not expire on April 15, 1971, but continued in force, upon his theory, indefinitely. There was really no production on the lease ever, although there had been little pockets of oil found in the course of drilling operations. No oil was sold and the lessor did not receive royalties under the lease. At best there was a mere showing of oil.

In Enfield v. Woods, 198 Ky. 328, 248 S.W. 842 (1928), this court, in considering the extension of the term of a lease by the clause "as long thereafter as oil or gas or either of them is produced from the leasehold estate," said:

". . . It will be observed that the lessee is not required to produce oil in paying quantities, but he is required to produce oil or gas, one or the other, from the premises. This, of course, means a production of oil or gas in such quantities as to be susceptible of division, so as to pay the landowner a royalty, even though small. A mere showing of oil manifestly is not sufficient, even though produced. The production must be tangible and substantial, but it need not be great."

■■ As a general rule unless there is production on a lease on the last day of the primary term, the lease terminates. However, in those cases where the date of termination of the primary term and the date fixing the commencement of a well are the same, as in this case, the lease does not terminate if a well is commenced before that date until such time as the lessee has ceased to proceed with due diligence in an effort to develop the leasehold estate. Hisle worked until the middle of May before ceasing operation and then had to do so only because the driller had to go to National Guard camp. However, he admits that he closed down in an effort to enforce his option on the 90-acre tract, contending that he did not want to drill in a good well and increase the value of the entire tract without first having a lease on the remaining 90 acres. This in itself is evidence that he was not proceeding in good faith and with reasonable diligence to complete the well commenced. Lester v. Mid-South Oil Company, 296 F. 661 (6 Cir. 1924). For the reasons set out herein, Hisle's lease on the five-acre tract had expired by its own terms prior to the institution of the proceedings in the Adair Circuit Court.

So much of the judgment as invalidates the so-called option is affirmed, and that portion of the judgment holding the five-acre lease to be valid is reversed with directions that it be amended in conformity with this opinion.

PALMORE, C. J., and MILLIKEN, OSBORNE, REED, STEINFELD and STEPHENSON, JJ., sitting.

All concur.