**M. R. GODLEY, Plaintiff-Appellee,**

v.

**KENTUCKY RESOURCES
CORPORATION,
Defendant-Appellant.**

**M. R. GODLEY, Plaintiff-Appellant,**

v.

**PIEDMONT LAND SALES, INC., Hugh N. Rakes, J. E. Berry, Kentucky Resources Corporation, Clinton Coal Company and W. H. Goff, Defendants-Appellees.**

**M. R. GODLEY, Plaintiff-Appellee,**

v.

**PIEDMONT LAND SALES, INC., Hugh Rakes and Clinton Coal Company, Defendants-Appellants.**

**Nos. 79–3005–79–3007.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 24, 1980.

Decided Feb. 2, 1981.

Dale Cleland and William C. Hurtt, Cleland, Hurtt, Witt & Weil, Pittsburgh, Pa.,

Amos Eblen, Eblen, Milnet, Rosenbaum & Wilson, Lexington, Ky., for defendant-appellant in No. 3005 and for defendants-appellees in No. 3006.

John H. Burrus, Weldon Shouse, Shouse & Burrus, Lexington, Ky., for plaintiff-appellee in No. 79–3005, for plaintiff-appellant in No. 79–3006 and for defendants-appellants in No. 79–3007.

William P. Sheffield, Abingdon, Va., for Piedmont Land Sales, H. Rakes, J. E. Berry and Clinton Coal Co.

Before MARTIN and JONES, Circuit Judges, and PECK, Senior Circuit Judge.

JOHN W. PECK, Senior Circuit Judge.

In this diversity action M. R. Godley seeks to quiet title to approximately 24,700 acres located in Kentucky. The multiple conveyances and other transactions involving this property are described in the opinion of the district court, and no purpose would be served by a restatement of those facts here. *Godley v. Piedmont Land Sales, Inc.*, 505 F.Supp. 397 (E.D.Ky.1978). Accordingly, only those facts directly bearing on this decision are discussed herein. Both the plaintiff and defendants have appealed from different portions of the district court's decision.

The district court ordered that title be quieted in plaintiff Godley, subject only to a mineral lease made to John Graham and L. D. Graham and their successors in interest. This judgment does not affect the rights or claims of persons not litigants in this suit. The district court found that three deeds passing from defendant Piedmont Land Sales, Inc. (Piedmont) to Godley were conveyances in fee simple. As a result, the district court concluded that as of October 10, 1972, the recordation date of the last of these deeds, Godley took all title which Piedmont had in the property. There is no dispute among the parties to this action that Piedmont possessed merchantable title to the property in question at the time the deeds were delivered to Godley.

## I.

The sole contention of all defendants on this appeal is that the district court erred in determining that the deeds to Godley were conveyances rather than security instruments. Since these deeds purport to affect title to Kentucky land, Kentucky law must be applied to determine the effect of the deeds. *Belcher v. Elliott*, 312 F.2d 245 (6th Cir. 1963); *Newman v. Hi Hat Elkhorn Coal Company*, 298 F.2d 119, *rehearing denied*, 302 F.2d 723 (6th Cir. 1962), *cert. denied*, 371 U.S. 819, 83 S.Ct. 33, 9 L.Ed.2d 59 (1962).

Each of the deeds states that Piedmont sells, grants, and conveys a one-half undivided interest with covenant of Special Warranty of Title to Godley. The first two deeds together convey a one-half undivided interest in the entire property here in dispute. The third deed conveys Piedmont's remaining one-half interest in the same property.

In *Gish v. Terrell*, 266 Ky. 424, 99 S.W.2d 168 (1936), the highest court of Kentucky affirmed the proposition that:

> The presumption, of course, arises that the instrument is what it purports on its face to be—an absolute conveyance of land. To overcome this presumption, and to establish its character as a mortgage, the cases agree that the evidence must be clear, unequivocal, and convincing.

*Gish, supra*, 99 S.W.2d at 170, *citing, Oberdorfer v. White*, 78 S.W. 436 (Ky.1904). The *Gish* court reversed a finding that an instrument was given as security for a loan because that instrument, on its face, was a conveyance that did not refer to the notes it was alleged to secure, and because the evidence was not sufficiently clear and convincing to establish that the instrument was intended as anything other than what it appeared to be. The burden of proof by clear and convincing evidence is on the one who claims that an instrument is other than what it appears to be. *Maas v. Maas' Admin.*, 255 S.W.2d 497, 499 (Ky.1952).

▮ Each of the three deeds in the present case purports to "sell, grant, and convey . . . [to Godley] . . . with covenant

of Special Warranty of Title." There is no suggestion in the texts of these instruments that they were intended as anything other than conveyances of Piedmont's title to Godley. The district court carefully considered the defendants' allegations that the three deeds were given as security for loans rather than as absolute conveyances. The court weighed the testimony of the principals to the deeds, evaluated their respective credibilities, and examined the evidence presented regarding the circumstances surrounding the transactions. Based on this thorough examination, the district court concluded that the parties intended the deeds to be exactly what they appeared to be, conveyances to Godley in fee simple.

▉ Defendants contend that the circumstances surrounding the execution of the deeds show that they were intended as security for a loan from Godley to defendant Rakes, the owner of Piedmont Land Sales, Inc. The intent of the parties at the time of the transactions is a question of fact. *See Poyner v. Lear Siegler, Inc.,* 542 F.2d 955 (6th Cir. 1976), *cert. denied,* 430 U.S. 969, 97 S.Ct. 1653, 52 L.Ed.2d 361 (1977). This court will not set aside the district court's fact finding unless that finding is clearly erroneous. Fed.R.Civ.Pro. 52(a); *In re Inland Gas Corp.,* 208 F.2d 13 (6th Cir. 1953). The findings of the district court are not clearly erroneous unless, upon review of the entire record, this court is left with a definite and firm conviction that a mistake was committed. *S. C. Johnson & Son, Inc. v. Johnson,* 266 F.2d 129, 143 (6th Cir. 1959), *cert. denied,* 361 U.S. 820, 80 S.Ct. 65, 4 L.Ed.2d 65 (1959). The burden of showing such a mistake is upon the defendants in this case. *Id.* Where, as in this case, the fact finding depends primarily on the credibility of witnesses, this court must give due regard to the district court's opportunity to observe the witnesses and to judge their credibilities. The district court's finding regarding intent cannot be set aside merely because there is conflicting testimony on the record. *Walling v. General Industries Co.,* 330 U.S. 545, 550, 67 S.Ct. 883, 91 L.Ed. 1088 (1947).

The deeds from Piedmont to Godley appear on their faces to be absolute conveyances. In light of the district court's findings, the defendants' assertions that the deeds were intended as security instruments fail to establish clearly, unequivocally, and convincingly that the deeds were anything other than conveyances. The district court's conclusion that the deeds conveyed all Piedmont's title to Godley is therefore affirmed.

## II.

On appeal, Godley asserts that the district court erred by failing to clear his title of various recorded assignments of rights created by a "mining lease" from Piedmont to John W. and L. D. Graham. This lease was executed and recorded prior to the deeds that conveyed the property encumbered by the mining lease to Godley. Godley does not dispute the validity of the lease in the hands of the Grahams as an encumbrance on his title. However, Piedmont, as lessor, assigned to J. E. Berry its rights to all monies due from the lease as well as "all rights and interests" in the lease. This assignment was executed prior to the deeds to Godley, but was recorded after Godley received and recorded his deeds. Furthermore, the Grahams, as lessees, assigned their rights under the lease to the Clinton Coal Company after Godley acquired the property. This assignment was also recorded. Godley contends that these assignments were each invalid, for different reasons, and that the records of these assignments, and subsequent assignments derived from them, are clouds on his title and should have been expunged by the district court.

The district court found that "the evidence was silent as to whether Godley had notice," prior to his receipt of the deeds, of Piedmont's assignment of its interests in the mining lease. The court concluded that the ownership of the lessor's beneficial interest in the mining lease could not be determined since this issue had not been developed. Consequently, the district court failed to expunge from the records Pied-

mont's assignment of its interest in the lease. In reaching this result, the district court failed to consider applicable Kentucky law and committed error.

■ In order to determine whether Piedmont's assignment of all its rights and interests in the mining lease was a valid conveyance in derogation of Godley's title, it must be determined what rights and interests were assigned. The question of what rights were created by the mining lease was not decided by the district court. However, an unambiguous instrument conveying property, or specified property rights, must be construed according to its terms, not according to its creator's intent, and is in and of itself generally determinative of the nature and extent of a conveyance. *Phelps v. Sledd*, 479 S.W.2d 894 (Ky. 1972); *Inland Steel Co. v. Isaacs*, 291 S.W.2d 522 (Ky.1956); *Buchanan v. Watson*, 290 S.W.2d 40 (Ky.1956). Consequently, this court may determine the effect of the mining lease without recourse to a trier of fact. *See Ramsey v. Yunker*, 311 Ky. 820, 226 S.W.2d 14 (1950). *See also, Duncan v. Greene*, 253 S.W.2d 592 (Ky.1952); *Kentucky Natural Gas Corp. v. Carter*, 303 Ky. 559, 198 S.W.2d 311 (1946).

While termed a "lease," the agreement between Piedmont and the Grahams is in fact a hybrid instrument. Its legal effect, under Kentucky law, differs from that of a lease for the use of surface land only. The "lease" not only gives the lessee the right to occupy the property for a term of fifteen years, but also incorporates an agreement to sell a portion of the realty. *Mills v. Mills*, 275 Ky. 431, 121 S.W.2d 962 (1938). As consideration for the agreement, the lessee makes certain covenants and agrees to pay a fifty cent "royalty" on each ton of coal removed. In addition, the lessee promises to remove a minimum amount of coal each year of the lease, until such time as minable, merchantable coal is no longer to be found on the property in sufficient amounts to meet the minimum requirements.

■ One of the rights assigned by Piedmont to Berry was the right to all monies to become due by virtue of the lease. If the only payments due the lessor under the lease were compensation for coal taken from the land, the lessor's right would simply be a right to payment under the contract. The assignment of a chose in action for money due is not a recordable instrument. *National Surety Corp. v. Massachusetts Bonding & Insurance Co.*, 280 Ky. 785, 134 S.W.2d 611 (1939). However, the mining lease here provides not only that the lessee will pay for the coal removed, but also that he will extract a minimum amount of coal. These provisions clearly obligate the lessee to pay a minimum royalty regardless of the actual amount of coal removed in a given year. A minimum royalty, not being limited to the coal actually removed, is "simply the consideration for the use of the property." *Bond v. Jackson County Coal Co.*, 106 F.Supp. 247, 252 (E.D. Ky.1952). Money paid for the use of the property, though designated a royalty, must be regarded as rent. *See Saylor v. Howard*, 229 Ky. 826, 18 S.W.2d 279 (1929). The right to unaccrued rent is a species of incorporeal hereditament and is classified as real property. *Baker v. Vanderpool*, 296 Ky. 663, 178 S.W.2d 189 (1944); 52 C.J.S. *Landlord & Tenant* § 462b (1968).

■ The assignment by Piedmont to Berry thus involved a transfer of title to real property. By statute, the unrecorded assignment of this interest to Berry was invalid against Godley unless Godley had notice of that assignment prior to the time he received the deeds to the property. Ky. Rev.Stat.Ann. § 382.270 (Baldwin). The district court stated that there was no evidence as to whether Godley had notice of the assignment to Berry. The burden of showing that Godley had notice of the assignment was on any defendants who claimed title through the unrecorded assignment. *See McKinney v. Fox*, 305 Ky. 659, 205 S.W.2d 315 (1947). The failure of defendants to meet this burden cannot disturb Godley's recorded title. Therefore, the assignment to Berry of the lessor's interests in the mining lease, and subsequent assignments derived from it, are invalid against

Godley. Godley's title should therefore be quieted against defendants who claim interests as a result of these assignments.

### III.

The district court determined that there was no legal or equitable limitation upon the Grahams, as lessees under the mining lease, to prevent them from doing with their valid lease as they chose. Godley contends that this conclusion was erroneous because the fourteenth clause of the lease bars any "modification" of the lease except by written agreement signed by the lessor and the lessees. Godley argues that he had succeeded to any rights of Piedmont as lessor prior to the time that the Grahams assigned their lease rights. Furthermore, it is Godley's contention that an assignment of the lessees' interests is a "modification" under the terms of the fourteenth clause of the lease. Thus, Godley urges that the district court erred in stating that there was no limitation on the Grahams which would prevent them from assigning their lease rights, and that the Grahams' assignment without Godley's consent was invalid. Godley contends that the district court should have quieted his title against defendants who claim an interest in the property as a result of the invalid assignment by the Grahams.

Godley's argument can be persuasive only if the fourteenth clause of the mining lease constitutes a valid restriction on the lessees' rights to assign their leasehold interests. As stated above, the mining lease is a hybrid instrument. By its terms it "leases, lets, and demises" the described property to the Grahams for a period of fifteen years. The lease is also a contract to sell a portion of the realty to the lessee. *See Head v. Little*, 312 Ky. 10, 226 S.W.2d 322 (1950). The plain language of the lease compels the conclusion that the lessee was granted both an estate for years to the entire property, subject to a limitation that the lessee explore and mine the property, and a contract right to mine and remove coal.

██ Placed in this context, Godley's argument is that the fourteenth clause of the lease is a valid restriction on the Grahams' rights to assign their estate for years and their rights under the contract. While restraints on the alienation of property interests are looked on with disfavor, they may nonetheless be upheld when not repugnant to a plain provision of law and not unreasonable. *Highland Realty Co. v. Graves*, 130 Ky. 374, 113 S.W. 420 (1908). However, because they are disfavored, a restrictive covenant in derogation of a property right will not be extended to include anything not clearly expressed by the language of the instrument conveying the right. *See Parrish v. Newbury*, 279 S.W.2d 229, 233 (Ky.1955); *Glenmore Distilleries Co. v. Fiorella*, 273 Ky. 549, 117 S.W.2d 173, 176 (1938); 4 Corbin on Contracts § 873, at 494 (1951). As successor to Piedmont, Godley seeks the benefit of the restriction imposed by clause fourteen of the lease. At best, the restriction on "modifications" of the lease is ambiguous when purported to include not only alterations of the covenants of the lease, but also an assignment of the Grahams' estate for years and their interests in the coal. Kentucky law requires that this restriction be construed most strongly against Godley, *Parrish, supra*, at 234, and it would be improper for any court to redraft that restriction even if it were able to determine that Piedmont had intended the lease restriction to limit the alienability of the lessees' interests. *Connor v. Clemons*, 308 Ky. 9, 213 S.W.2d 438 (1948). Therefore, it is not necessary to remand this action to determine whether the fourteenth clause of the lease was intended to restrict the alienation of the lessees' rights. The fourteenth clause is ambiguous and must be construed against Godley, with the result that it imposes no restraint on the Grahams' rights to assign their interests under the lease. The district court reached the proper result in failing to find that the fourteenth clause of the lease prevented the Graham assignment and in failing to quiet Godley's title against the Graham assignment for that reason.

██ Godley's remaining arguments assert, in essence, that the assignment by the

Grahams of their rights under the lease were invalid because defendant Hugh Rakes ultimately benefits from that assignment. Godley contends that fraudulent acts by Rakes in selling the property to Godley make it inequitable for Rakes to receive the benefit of the lease.

The district court concluded that Godley failed to establish civil fraud by Rakes by a preponderance of the evidence. Even if the court erred in this conclusion and Rakes' actions were in fact fraudulent, Godley's argument is unpersuasive. The actions of Rakes in his dealings with Godley can have no bearing on the validity of the Grahams' assignment of their rights to whomever they chose. The mining lease created alienable property and contract rights in the Grahams. The transactions between Godley and Rakes were independent of the actions of the Grahams and cannot affect the Grahams' right to assign their interests.

The case is remanded with directions to quiet Godley's title of claims derived from the assignment of Piedmont's mining lease interests to J. E. Berry. The district court order is affirmed in all other respects.