816 F.2d 678
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
In re ALPHA CONCRETE CORPORATION; Alpha Precast
Corporation; Alpha Concrete of Medina, Inc., Debtors,
ALPHA CONCRETE CORPORATION, Plaintiff-Appellant,
Alpha Precast Corporation; Alpha Concrete of Medina, Inc., Plaintiffs,
v.
George LEASE, Defendant-Appellee.
 No. 86-3341.
 United States Court of Appeals, Sixth Circuit.
 April 15, 1987.
 
 Before JONES, Circuit Judge, BROWN, Senior Circuit Judge, and RUBIN, Chief, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiffs appeal the district court's affirmance of the bankruptcy court's order disallowing their cross-claim against the defendant under 11 U.S.C. Secs. 547 and 550 (1982). Because we agree with the district court's conclusion that the bankruptcy court's factual findings were not clearly erroneous, we affirm.
 
 
 2
 This appeal stems from the creditors committee's allegation that the bankrupt, Alpha Concrete Corporation ("Alpha"), made two preferential payments to George Lease ("Lease") by making payments to WAG Equipment Company ("WAG"), which WAG passed on to Lease.
 
 
 3
 In 1978, WAG purchased Lease's stock in South Euclid Concrete Company. WAG signed a note payable to Lease in the principal amount of $237,500. This note was secured by all assets of the South Euclid Concrete Company and by an agreement pledging the subject shares of stock. In 1979, South Euclid Concrete Company changed its name to Alpha Concrete Corporation. Because Lease did not subsequently file a new financing statement, this name change limited the amount of Alpha's assets that would be security for WAG's note with Lease.
 
 
 4
 In 1982, Alpha began to deposit money directly into WAG's checking account. The bankruptcy court found that Alpha owed to WAG the amounts deposited in this checking account.
 
 
 5
 Also in 1982, Lease discovered that Alpha had defaulted with respect to some of its obligations under the agreement pledging the shares of stock sold by Lease to WAG. Accordingly, Lease accelerated the payment of the WAG note. To implement this, an "extension agreement" was signed by Lease, WAG, Alpha, and various company officers. It provided that WAG would pay off the "WAG Note" in four installments--three $50,000 payments and one $18,192 payment. The extension agreement was secured by a personal note from the president of WAG, the president of Alpha, and a third person. Under this extension agreement, WAG made two $50,000 payments to Lease in the period 90 days prior to Alpha's bankruptcy petition. The checks for these payments were drawn on the WAG check account to which Alpha had recently deposited money.
 
 
 6
 Alpha filed its petition in bankruptcy under Chapter 11 of the Bankruptcy Code on September 14, 1982. George Lease filed a claim against the estate based upon WAG's failure to make its final two payments and Alpha's consequent liability. The creditors committee brought a cross-claim against George Lease, claiming that the first two payments to him from WAG were actually payments from Alpha. Since these payments occurred in the 90 days prior to Alpha's bankruptcy petition, the creditors committee sought to have them avoided as preferential transfers. Following a trial, the bankruptcy court held that the payments made by WAG to Lease were not for any debt of Alpha. WAG paid its own money to Lease, and WAG owed Lease the money it paid him. The court therefore denied the creditors' cross-claim.
 
 
 7
 The creditors committee appealed this decision to the district court. The district court affirmed the bankruptcy court on the basis that its findings were not clearly erroneous. The district court also rejected the creditors' attempt to introduce a claim under 11 U.S.C. Sec. 550 since such a claim is conditioned upon a prior finding of an avoidable transfer.
 
 
 8
 The findings of fact made by a bankruptcy judge are accorded the same weight as the factual findings of a district judge under Fed.R.Civ.P. 52. See Bankruptcy Rule 8013, advisory committee note. Therefore, we may review the bankruptcy court's findings only under the clearly erroneous standard. A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948); Godley v. Kentucky Resources Corp., 640 F.2d 831, 834 (6th Cir.1981). Upon review of the evidence in this case, we find no reason to doubt the bankruptcy court's factual finding that WAG made payments to Lease on its own behalf, rather than on behalf of Alpha. Since no transfer of property occurred between Alpha and Lease, the requirements of 11 U.S.C. Sec. 547(b) cannot be met, and we need not determine whether Lease was a creditor of Alpha.
 
 
 9
 On appeal, plaintiffs attempt to argue in the alternative that Alpha made a preferential transfer to WAG, and that as a subsequent transferee Lease is still the recipient of an avoidable transfer. However, the bankruptcy court specifically noted that plaintiffs failed to raise the "question of whether the deposits by Alpha Concrete into the WAG Equipment Company accounts constituted preferences." J.App. at 55. Although the facts may implicate this issue, plaintiffs have forfeited their right to raise it on appeal by failing to raise it in the bankruptcy court.
 
 
 10
 Accordingly, we AFFIRM the district court.