**E.H. LESTER LEASING CO., and Burl Cantrell, Jr., Appellants,**

v.

**Chester F. GRIFFITH and Kimberly G. Griffith, Appellees.**

**Chester F. GRIFFITH and Kimberly G. Griffith, Cross–Appellants,**

v.

**E.H. LESTER LEASING CO., and Burl Cantrell, Jr., Cross–Appellees.**

Nos. 88–CA–106–MR, 88–CA–214–MR.

Court of Appeals of Kentucky.

Sept. 8, 1989.

Discretionary Review Denied
by Supreme Court
Nov. 22, 1989.

Dale Phillips, Johnson & Johnson & Phillips, Paintsville, Gordon B. Long, Salyersville, for appellants/cross-appellees.

David LeMaster, Paintsville, for appellees/cross-appellants.

Before ELSWICK, HAYES and HOWARD, JJ.

HAYES, Judge:

The central issue in this appeal and cross-appeal is the valuation of a lessor's royalty interest in an oil and gas lease on property which is subject to a perpetual nonparticipating royalty interest.

In 1982, Chester Griffith executed an oil and gas lease to Burl Cantrell, Jr. The lease, executed on a Kentucky 88 oil and gas form, provided for a primary term of 90 days and the customary "as long thereafter" clause. It also contained the following standard provision: "If said lessor owns a less interest in the above described land than the entire undivided fee simple estate therein, then the royalties and rentals herein provided shall be paid the lessor only in the proportion which his interest bears to the whole and undivided fee." Further, the lease provided for the payment to Griffith of the customary ⅛ royalty.

A subsequent title examination revealed that the lessor's predecessors in title had in 1919 executed two royalty deeds. The language in each of these instruments makes clear they were creating a ¹⁄₁₆ perpetual nonparticipating royalty interest. In *Gallin v. Combs*, Ky., 341 S.W.2d 778 (1961), the Court gave the following definition of the nature of the perpetual nonparticipating royalty interest:

A royalty interest created by grant or reservation prior to lease is commonly referred to as a perpetual nonparticipating royalty. The owner of such an interest is not privileged to enter on the land and produce oil and gas and thus has no authority in the execution of leases covering the mineral estate. The mineral fee owner has the sole privilege of drilling for and producing the oil and gas and, therefore, the sole legal power to execute a lease to a third person. The nonparticipating royalty owner is entitled to his stipulated portion of the production expense free.

As each of the 1919 deeds created a ¹⁄₁₆ royalty, the leasehold is subjected to a ⅛

perpetual nonparticipating royalty interest. A good discussion of the factors which distinguish deeds from mere leases is found in *Ramsey v. Yunker*, 311 Ky. 820, 226 S.W.2d 14 (1950).

Three wells were drilled on the property at significant expense and the oil produced sold to Ashland Oil Company which holds the proceeds of production pending the outcome of this litigation. It is the position of Lester Leasing Company that the ⅛ perpetual nonparticipating royalty interest must be satisfied from the ⅛ royalty reserved to lessor Griffith by the "88 lease form," thereby leaving Griffith, the lessor, nothing whatsoever from the lease of the minerals under his land. The trial judge disagreed and, while giving effect to the ⅛ nonparticipating royalty interest, used the "lesser interest" clause in the lease to diminish the lessor's interest to ⅛ of ⅞'s or ⁷⁄₆₄'s of the production. We are convinced that the trial judge's solution is correct.

■ W.L. Summers in his treatise on *The Law of Oil and Gas* notes that the purpose of the lesser interest clause is to protect "the lessee in situations where the lessor does not own all of the land described or where he is co-owner of a divided interest in the land or the minerals." Vol. 3A, § 609.2. Here we find a situation in which the lessor's right to lease the mineral estate is encumbered by a ⅛ perpetual royalty interest. The bargain he struck pursuant to the lesser interest clause requires that his interest be reduced to ⅛ × ⅞ or ⁷⁄₆₄'s because that is the extent of his interest. Were it otherwise, we believe the lease should be cancelled due to failure of consideration—it would be an absurd inequity to require the lessor to give up his interest in the minerals below his land, put up with the inconvenience attendant to production and receive nothing in return. Thus, we are in accord with the decision of the trial judge as to the various interests established by the lease.

■ In their cross-appeal, appellees insist that the lease in question expired by its own terms when production was not commenced during the primary term. We do not agree. Appellants' testimony plainly shows that drilling commenced on the leasehold on July 6, 1982, which appellees note is the 91st day and therefore outside the primary term. However, the date July 6, 1982, has been inserted into the commencement provision of the development clause in the lease: "If no well be commenced on said land on or before the *6th* day of *July 1982* this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor...." We are convinced that the insertion into this clause of a date certain for the last available day for commencement of drilling to avoid expiration of the lease evidences a meeting of the minds as to the "primary term" of the lease, the "90 day" clause notwithstanding. Thus commencement of drilling on July 6, 1982, coupled with the failure of appellees to object to the commencement day until after the dispute concerning the royalty arose, leads us to conclude that both parties believed the primary term of the lease included July 6, 1982. This holding is in accord with *Hisle v. Keltner*, Ky., 495 S.W.2d 773 (1973), in which the Court noted that where the termination date of the primary term and the commencement date are the same, the lease does not terminate if a well is commenced before that date. We are also convinced that this case can be distinguished from *Vaughn v. Hearrell*, Ky., 347 S.W.2d 542 (1961), as the commencement clause is not being used to extend the term of the lease but coincides with it.

Furthermore, we note the following statement in Summers, *The Laws of Oil and Gas* § 349, concerning what constitutes drilling or commencement of a well:

The general rule seems to be that actual drilling is unnecessary, but that the location of wells, hauling lumber on the premises, erection of derricks, providing a water supply, moving machinery on the premises and similar acts preliminary to the beginning of the actual work of drilling, when performed with the bona fide intention to proceed thereafter with diligence toward the completion of the well, constitute a commencement or beginning

of a well or drilling operations within the meaning of this clause of the lease.

We find appellants' testimony concerning the date of drilling sufficient support for the trial judge's conclusion that the lease had not expired.

■ Finally, we agree with appellees that this is a liquidated claim on which they are entitled to interest as a matter of right.

The judgment of the Magoffin Circuit Court is affirmed.

All concur.